**UNITED STATES of America,
Appellee,**

v.

**Steven Paul VALOT, Defendant-
Appellant.**

**No. 1110, Docket 72-2025.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 20, 1972.

Submitted May 17, 1973.

Decided June 27, 1973.

Pierce Gerety, New York City (Robert Kasanof, Phylis Skloot Bamberger, The Legal Aid Society, New York City, of counsel), for defendant-appellant.

Howard J. Stechel, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., L. Kevin Sheridan, Asst. U. S. Atty., E. D. New York, of counsel), for appellee.

Before MOORE, MULLIGAN and TIMBERS, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York, Mark A. Costantino, *Judge,* sitting without a jury, which convicted appellant on three counts of an indictment arising out of the attempted importation of approximately sixteen pounds of a marijuana derivative, hashish. Appellant was sentenced to four years imprisonment on each count, sentences to run consecutively. Appellant was also sentenced to a special parole term of two years and was fined $2500.

Although appellant does not challenge the sufficiency of the evidence used to convict him, he does raise two points on appeal. First, he claims to have been denied a speedy trial because he was allegedly not tried in accordance with this Circuit's "Rules Regarding Prompt Disposition of Criminal Cases" (28 U.S.C.A. (Supp.1972)). Appellant also asserts that his sentence of three consecutive four year terms is unlawful.

After oral argument on this appeal we remanded this case to the district court "for a further hearing on the motion to dismiss the indictment for failure to comply with the Second Circuit Rules, *supra* * * *" (473 F.2d 667, 668 (2d Cir. 1973)). We directed the district court to make findings of fact on this issue and, if required, to take additional evidence as relevant. We specifically reserved decision on the propriety of the consecutive sentences and retained jurisdiction over the case.

Upon remand, the late Judge Rosling, who had conducted the pretrial proceedings in this case, and Judge Costantino, who had presided at the trial, agreed that Judge Rosling would consider the speedy trial issue. After affidavits had been received from both appellant and the Assistant United States Attorney and after several hearings had been held, Judge Rosling, in an opinion filed March 8, 1973, held that there had been no violation of the Speedy Trial Rules. Appellant subsequently submitted a Supplemental Brief claiming further errors in the conduct of the hearings on remand.

On November 21, 1971, Valot was arrested at John F. Kennedy Airport by United States Customs Agents when he was discovered attempting to smuggle 7.1 kilograms of hashish into the United States in the false bottom of

a suitcase. After his arrest Valot admitted that he had previously smuggled hashish into the country on four previous occasions and he offered to cooperate with Customs officials if it would help him. At his arraignment on November 22, 1971, after consulting with his court appointed counsel, Valot conferred with an Assistant United States Attorney. Valot again offered to cooperate with Customs Agents in California where he lived and where he had intended to deliver the hashish. The Assistant United States Attorney informed Valot that if he did cooperate, the charges against him might be reduced or dismissed. Valot agreed to cooperate and was released on personal bond.

Valot then proceeded to California where he was met by a Customs Agent. Between December, 1971, and April, 1972, Valot supplied the Customs Agent with some information, none of which was of any value. In mid-April, the Los Angeles police advised the Customs Agent with whom Valot was supposedly cooperating that Valot was once again trafficking in drugs. Ultimately, the United States Attorney's office in the Eastern District of New York advised Valot's New York counsel that the government would no longer refrain from presenting its case to the grand jury. The instant indictment was returned on May 9, 1972. On May 13th, Valot was arrested at San Francisco International Airport while attempting to smuggle approximately twenty-two pounds of hashish into the United States. On May 15th, the government filed its Notice of Readiness for trial on the indictment which had arisen out of Valot's November, 1971, activities.

Rule 4 of the Second Circuit's Rules Regarding Prompt Disposition of Criminal Cases provides:

> In all cases the government must be ready for trial within six months

from the date of the arrest   *   *   *. If the government is not ready for trial within such time, or within the periods as extended by the district court for good cause under rule 5, and if the defendant is charged only with non-capital offenses, then, upon application of the defendant or upon motion of the district court, after opportunity for argument, the charge shall be dismissed.[1]

Rule 5 enumerates several periods of time which shall be excluded from the computation of the time specified in Rule 4. One of these, Paragraph 5(h), provides that in computing the time within which the government should be ready for trial under Rule 4,

> [there shall be excluded o]ther periods of delay occasioned by exceptional circumstances.

Valot stresses in his briefs on appeal that although the government did file a Notice of Readiness on May 15, 1972, six days after the grand jury had returned the indictment and five months and twenty-four days after he was first arrested, he did not plead to these charges until May 26, six months and five days after his arrest.

The government claims that there was no delay in this case which is properly chargeable to the United States. The government states that, in order to secure Valot's cooperation, it did not arrange for Valot to plead to the charges against him since it was possible that, for the final disposition of his case, no such action would have been required.

In his affidavit prepared for the proceedings on remand, Valot did not contest that he had agreed to cooperate with the government in exchange for possible lenient treatment.

1. This Circuit's Rules Regarding Prompt Disposition of Criminal Cases (the Speedy Trial Rules) became effective in July, 1971. By vote of the Second Circuit Judicial Council on February 28, 1973, the Second Circuit's plan for the Prompt Disposition of Criminal Cases, which effectively repeals these Rules, was adopted pursuant to Rule 50(b), F.R.Cr.P., effective April 1, 1973.

No extended discussion of this aspect of Valot's appeal is required. Appellant's offer of cooperation and the government's acceptance of this offer led to Valot's release on November 24, 1971. From that time until just before the case was presented to the grand jury, the government believed that Valot was cooperating in its efforts to enforce the drug laws. This period of time must be excluded from the computation of the six month period specified in Rule 4. No interest properly protected by Rule 4 would be served by permitting appellant to invoke that Rule in this case. In addition, the possibility of the government's accepting a defendant's offer of cooperation must be protected. This Court will not permit the perversion of the Rules which Valot here attempts.

In the Supplemental Brief for Appellant served after the remand proceedings, Valot endeavors to turn this proceeding into a contract case, claiming that the "quid", delay in prosecution, was for the "quo", the promise to cooperate, and that Judge Rosling held that there were mutual promises to cooperate and, for such consideration, to withhold indictment.

The criminal law is not to be enforced on the basis of contracts drawn between the accused and the government. Appellant has conceded his promise of cooperation. This is the only relevant fact. To give him an opportunity to fulfill his promise, he was released on his own recognizance. He had a mission, namely, to assist the government in enforcing the drug laws. This might have taken a week, a month, or a year to accomplish. For the appellant even to claim that the period of cooperation applies to the Speedy Trial Rules offends reason; to use his own unconscionable perfidy as a basis for such a claim is even worse.

We hold that the situation presented by the facts of this case comes within the meaning of "exceptional circumstances" as that phrase is used in Rule 5(h).

■ ■ As to the claim that the Assistant United States Attorney should

have been called for cross-examination, there was no disputed fact on which he could have thrown any light, nor was it necessary to transport appellant from his California jail to the Eastern District of New York to testify as to what he had already conceded in his affidavit.

The denial of the motion to recuse is affirmed. The speedy trial motion must be decided on the facts, and those here relevant are not capable of dispute. The comments exchanged between court and counsel cannot alter the facts basic to the decision.

■ Valot also appeals the imposition of multiple consecutive sentences which were imposed for his convictions on the three counts of the indictment which arose out of what Valot calls a "single transaction." The indictment was made up of the following counts: Count I—knowing and intentional importation into the United States of approximately 7.1 kilograms of hashish, in violation of 21 U.S.C. § 952(a); Count II—possession of hashish aboard an aircraft arriving in the United States, in violation of 21 U.S.C. § 955; and Count III—possession of hashish with intent to distribute it, in violation of 21 U.S.C. § 841(a). Each of the statutes Valot was convicted of violating is found in the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the Act) (21 U.S.C. § 801 et seq.).

Appellant argues that in determining whether consecutive sentences are appropriate, it is the intent of Congress which is controlling. See e. g., Prince v. United States, 352 U.S. 322, 327, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); Gore v. United States, 357 U.S. 386, 393, 78 S. Ct. 1280, 2 L.Ed.2d 1405 (1958). He further argues that the legislative history of the Act shows that Congress intended that first offenders convicted of violations involving hashish would be sentenced to a maximum of five years, and that, in reorganizing the drug laws as it did, Congress did not intend that three separate convictions should be obtained for which the defendant could be given consecutive sentences totalling twelve years.

It is true, as Valot states, that in some respects the Act contains penalty provisions which are more lenient than prior laws. For instance, the Act eliminates mandatory minimum sentences (except in one instance, not relevant here), it provides for shorter sentences for marijuana violations than for those involving heroin, and it prescribes lesser penalties for "mere possession" than for "trafficking." (*See* 21 U.S.C. §§ 841, 844; House Comm. on Interstate and Foreign Commerce, H.R.Rep. No. 1444, 91st Cong., 2d Sess. to accompany H.R. 18583 in 1970 U.S.Code Cong. & Admin. News pp. 4566, 4614, 4616 (hereinafter cited as House Report 1444).

Scrutiny of the legislative history and an analysis of the Act itself provide no evidence that Congress intended to limit sentencing under the Act to concurrent sentences only. It is true that as to each of the sections under which Valot was convicted and sentenced House Report 1444 includes the statement

a violation with respect to [such section] * * * will be punished * * * by imprisonment of not more than five years * * *. 1970 U.S.Code Cong. & Admin.News at p. 4645;

*See also, id.* at p. 4614. However, we believe that rather than evidencing an intent to eliminate consecutive sentences for violations of the Act, the legislative history indicates that the Act's

sentencing procedures give *maximum flexibility* to judges, permitting them to tailor the period of imprisonment, * * * to the circumstances involved in the individual case. 1970 U.S.Code Cong. & Admin.News at p. 4576 (emphasis added).

At another point the House Report stated that the elimination of mandatory minimums was also designed to make the

penalty structure in the law *more flexible* * * *. *Id.* (emphasis added)

■ All of this convinces us that in "revis[ing] the entire structure of criminal penalties involving controlled drugs" (*Id.* at p. 4570) Congress did not intend to eliminate the *possibility* of consecutive sentences where the trial judge deemed them appropriate. We think that the elimination of such a basic procedure as consecutive sentencing should be accomplished only by the clearest indication from the Congress.

Having concluded that consecutive terms of imprisonment may be imposed for convictions obtained under the Act, we now turn to the question of whether consecutive sentences were appropriate in this case.

■ Appellant was convicted of violating the following statutes:

It shall be unlawful to * * * import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter * * *. 21 U.S.C. § 952(a) (Count I)

[It was undisputed that Valot was arrested while attempting to import such a substance.]

It shall be unlawful for any person to bring or possess on board any vessel or aircraft, or on board any vehicle of a carrier, arriving in or departing from the United States or the customs territory of the United States, a controlled substance in schedule I or II or a narcotic drug in schedule III or IV, unless such substance or drug is a part of the cargo entered in the manifest or part of the official supplies of the vessel, aircraft, or vehicle. 21 U.S.C. § 955 (Count II)

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; * * * 21 U.S.C. § 841(a) (Count III).

Appellant notes the close relationship between 21 U.S.C. § 952(a) and 21 U.S.C. § 955. While Section 952 prohibits importing hashish, Section 955 makes unlawful the possession of such substance aboard an aircraft or any vehicle

of a carrier arriving in the United States. Valot claims that Section 955 was enacted to cover the situation where hashish or other controlled substance is detected before the party attempting to smuggle it into the United States has consummated the importation. This section might also be used to prosecute the possession of hashish by one who had landed in the United States but who claimed to be proceeding on to another country without actually entering this country. It is abundantly clear that any instance of illegal importation of hashish by airplane must necessarily include the offense of possession of hashish aboard an aircraft. If both of these offenses are separately and cumulatively punished, then the maximum penalty for such importation would be ten years imprisonment, while the maximum penalty for one who imported such substances by private vehicle or on foot would be only five years.

The Supreme Court has often dealt with the question of consecutive sentences for single acts which violate several related statutes.[2] A most instructive case is Prince v. United States, *supra* which involved consecutive sentences imposed for "bank robbery" and for "entry into a bank with intent to commit robbery." In holding that consecutive sentences were not appropriate for these offenses, the Court said that if Congress had intended to punish separately both entry into a bank and robbery of that bank and to permit the sentences for each offense to be served consecutively, that "result could have been accomplished easily with certainty rather than by indirection." 352 U.S. at 328, 77 S. Ct. at 407. (footnote omitted).

We find nothing in the Act or in its legislative history to indicate that Congress believed that importation by carrier is a more serious offense than importation by private vehicle or on foot.

Indeed, it would seem that the only reason Congress enacted Section 955 was to cover cases involving the unconsummated importation of a controlled substance. We find that the offense of possession on board an aircraft merges with the offense of illegal importation once the latter offense has been committed. *See* United States v. Tonarelli, 55 F.R.D. 423 (D.P.R.1972). We therefore believe, under the authority of Prince v. United States, *supra,* that consecutive sentences for violations of Sections 955 and 952(a) are unlawful.

■ Valot further argues that the sentence for his conviction under 21 U.S.C. § 841(a) for possession with intent to distribute should not run consecutively to his sentence for illegal importation, since "it is obvious that in the great majority of cases the illegal importer has that intent [to distribute]." (Brief at 19).

The Supreme Court has held that a bank robber may not be sentenced to consecutive terms of imprisonment for bank robbery and for possessing the proceeds of a bank robbery. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). This, Valot claims, is authority for us to hold invalid the consecutive sentence imposed on the possession with intent to distribute count.

We disagree. Unlike *Heflin,* or the relationship between Sections 952(a) and 955, the relationship between importing (Section 952(a)) and possession with intent to distribute (Section 841(a)) is not one as to which there can be said to be a merger of the elements of one crime with the other. There is neither necessary nor close relation between the two crimes. In addition, the legislative history to which Valot points quite clearly indicates that Congress specifically intended that distributors of drugs should be severely dealt with.[3]

---

2. *See, e. g.,* Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958) ; Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) ; Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

3. "The penalties for * * * violations of the bill are, in general, less severe, depending upon whether the offense involves distribution to minors, other illicit transactions involving 'pushing' or incidental

We believe that Congress quite plainly intended that the offense of importation and that of possession with intent to distribute should be punished separately, and, in an appropriate case, with consecutive sentences.

Sentencing is properly a matter for the careful exercise of discretion by the district court. By differentiating the crimes of illegal importation and possession with intent to distribute, Congress has provided that where a defendant stands convicted of both offenses, consecutive sentences may be imposed, if the court deems them necessary.

While one might conjure up situations for which consecutive sentences for these offenses might seem harsh, this case poses no such problem.

We therefore affirm the decision of the district court that there was no violation of the Speedy Trial Rule and we remand for sentencing in accordance with this opinion.

It is so ordered.