UNITED STATES of America

v.

**Angel LOPEZ et al., Defendants.**

No. 76 Cr. 1017.

United States District Court,
S. D. New York.

Jan. 26, 1977.

Supplemental Memorandum Feb. 1, 1977.

Robert B. Fiske, Jr., U. S. Atty., Southern District of New York, New York City by James A. Moss, Asst. U. S. Atty., for United States of America.

Hal B. Patterson, New York City, for defendant Gladys Lopez.

Salvatore C. Alosco, New York City, for defendant Angel Lopez.

Irving Cohen, Geller & Cohen, New York City, for defendant Jacqueline Lindsley.

MEMORANDUM AND ORDER

PIERCE, District Judge.

Each of the three defendants in this prosecution alleging violations of the federal narcotics laws moves to dismiss the indictment for the alleged failure of the government to comply with the indictment and notice of readiness time requirements of the Southern District of New York Plan for Prompt Disposition of Criminal Cases, promulgated pursuant to the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–74. For the reasons that follow, the motions by Angel and Gladys Lopez are granted and the Court reserves decision on the motion of Jacqueline Lindsley.

According to the government, on March 10, 1976, Kiernan Kobell, an undercover agent of the Drug Enforcement Administration, met defendant Lindsley in a Manhattan bar, where Lindsley allegedly offered to sell Kobell one ounce of cocaine. On March 31, 1976, Kobell and Lindsley drove to a location nearby the apartment house occupied by Angel and Gladys Lopez. Kobell states that he gave Lindsley $1500 in marked bills as the purchase price for the cocaine and that Lindsley entered the apartment house and returned to the car shortly thereafter with the cocaine. Lindsley was thereupon arrested and taken into custody by DEA agents. While in custody, Lindsley entered into a waiver of arraignment upon the agent's statements that if she cooperated with the government, she might not be required to testify against other targets of the investigation, and the fact of her cooperation would be kept secret. Lindsley alleges that the agents told her she did not need to retain counsel and that if she cooperated, she would be free from prosecution; while the Court need not accept that statement as true for purposes of these motions, it is undisputed that the waiver of arraignment was entered into without the advice of counsel.

Lindsley was released that same evening and in the hours following transmitted to the DEA agents information which led to the issuance of a search warrant for certain amounts of cocaine and currency, believed

to be derived from the sales of drugs, said to have been located in the Lopez' apartment. During the early hours of April 1, 1976 the warrant was executed, and the DEA agents seized from the Lopez' apartment certain items of narcotics, narcotics paraphernalia, and some eight thousand dollars in cash, including the $1,500 in marked currency delivered to Lindsley by Kobell the night before. Defendants Angel and Gladys Lopez were taken into custody, and a criminal complaint filed against them charging violations of 21 U.S.C. §§ 812 and 841. On the same day, April 1, 1976, the Lopez' were arraigned on the criminal complaint before Magistrate Raby of this Court. No criminal complaint was ever filed against Lindsley.

On April 5, 1976, the government moved to dismiss the criminal complaint against the Lopez defendants and that motion was granted. The reason for this action was stated by the prosecutor in his affidavit filed in opposition to Lindsley's motion:

"It was determined within our office that for the safety of Lindsley, her cooperation must remain confidential and, further, that the immediate prosecution of this case would compromise that confidentiality. Thus, the Lopez' complaint was dismissed *solely* for the purpose of protecting Lindsley and the confidentiality of her status as a Government informant."

Thereafter, the government continued its efforts to obtain further information from Lindsley concerning her drug sources. The Lopez defendants assert that they believed that the matter was closed; indeed, following the dismissal of the complaint against them their counsel made several attempts to obtain the release of the $8,000 from the federal agents and from the prosecutor. Finally, in October, 1976, Lopez' counsel instituted a civil action in this court to recover the funds, naming the prosecutor and other federal officers as party defendants. On November 8, 1976, the instant indictment was filed, charging the three defendants with both conspiracy and substantive violations of 18 U.S.C. §§ 812 and

841. The indictment charges that the period of the conspiracy continued up until March 31, 1976, and none of the counts allege any acts by any defendants after that date.

On November 18, 1976, the Lopez defendants were arraigned on the indictment and a bench warrant issued for Lindsley. On or about December 1, 1976, Lindsley was taken into custody and arraigned before a Magistrate. On December 9, 1976, this Court set the matter down for trial on January 31, 1977. Defendants moved to dismiss on December 20 (Lopez') and 29, (Lindsley), 1976, and the motions were made returnable January 20 and 26 by consent of the parties. On December 29, 1976, the government filed its notice of readiness for trial.

### Discussion

■ While defendants in criminal cases increasingly have sought to avail themselves of the opportunity to move to dismiss indictments for claimed violations of the Speedy Trial Plan, the purpose of the Plan is not solely to insure the prompt disposition of criminal cases in order to protect the rights of those charged with crimes; the Plan is also intended to protect the public's interest in having criminal matters promptly resolved. See Statement of the Circuit Council, Second Circuit Rules for the Prompt Disposition of Criminal Cases, quoted in *United States v. Beberfeld*, 408 F.Supp. 1119 (S.D.N.Y.1976); see also *United States v. Flores*, 501 F.2d 1356, 1360 n. 4 (2d Cir. 1974) ("the Plan was not established primarily to safeguard defendants' rights."). While the Statement of the Circuit Council was issued in connection with the Plan adopted by the Southern District on April 1, 1973, the same interests are reflected by the text of the Speedy Trial Act of 1974, see 18 U.S.C. § 3162(a)(2), and by the current Southern District Plan adopted to implement the Act.

■ Since the Plan is directed specifically at the prosecutor and the court, if the court finds that the provisions of the Plan have been violated, and that there are no exceptional circumstances warranting pro-

longed delay, the indictment must be dismissed with prejudice unless the Court finds that the delay was due to excusable neglect on the part of the prosecutor. See Rule 11 of the Plan; *Hilbert v. Dooling*, 476 F.2d 355 (2d Cir. 1973) (en banc). In this inquiry the Court must also consider the factors set forth in the Speedy Trial Act itself, 18 U.S.C. § 3162(a)(2).

Rule 4 of the Statement of Time Limits and Procedures ("the Plan") provides in pertinent part as follows:

"If an individual is arrested or served with a summons and the complaint charges an offense to be prosecuted in this district, *any indictment or information subsequently filed in connection with such charge shall be filed* within the following time limits:

(1) If the arrest or service occurs before July 1, 1976, within 60 days of July 1, 1976" (emphasis supplied)

Rule 7 of the Plan provides in pertinent part:

"Notwithstanding any other time period which may be permitted or required under sections 3, 4, and 5, *the government must be ready for trial* on the earlier date measured according to the following time limits:

\*    \*    \*    \*    \*    \*

(1) If the arrest or service of summons occurs before July 1, 1977, within 180 days of the arrest or service of summons." (emphasis supplied)

Each of the three defendants move to dismiss alleging that the government has failed to comply with each of these requirements. Indeed, defendants were indicted approximately seven months and one week following their arrests, and four months and one week past July 1, 1976, the effective date of Rule 4. Thus, it is clear that the time limits of Rule 4 have been exceeded.

Rule 7's time limits also have been exceeded. Defendants were arrested on March 31 and April 1, 1976. Under Rule 7, the government was required to file a no-

tice of readiness for trial on or before October 1, 1976. As noted, the government in this case did not file its notice of readiness until December 29, 1976.

The government relies upon the decision of the Circuit Court in *United States v. Flores, supra,* for the proposition that the period between the dismissal of the criminal complaint and the filing of the indictment is excludable time under Rule 7. In *Flores*, the government dismissed the criminal complaint following its failure to secure the cooperation of an accomplice whose testimony was vital to proving its case. However, several months later such cooperation was secured and the indictment was filed. In affirming the subsequent conviction in a *per curiam* decision, the Circuit Court ruled that the period between the dismissal of the complaint and the filing of the indictment should not be charged against the government.

"During this period appellant was not subject to any of the disabilities associated with being under arrest, the subject of a complaint or indictment, or in the midst of a criminal prosecution. He was under no more jeopardy than any other citizen, and the fact that he might have been under investigation has no more effect after the dismissal on the running of the six-month period than it would have had before his arrest, that is, none." (*Flores, supra,* 501 F.2d at 1359–60; see also *United States v. McClean*, 528 F.2d 1250 (2d Cir. 1976) (Mansfield, J.).)

The Court concludes that the general principle enunciated in *Flores* should be applied to the facts of this case in the context of a subsequent decision in this court. In *United States v. Beberfeld*, 408 F.Supp. 1119 (S.D.N.Y.1976), Judge Owen concluded that the *Flores* principle was inapplicable where the actions of the government imposed a continuing restraint upon the person or property of a criminal defendant, and that in such cases, the requirement that the government file its notice of readiness must begin to run from the date of the arrest, regardless of intervening circum-

stances such as the possibility of cooperation. After noting that *Flores*, despite its finding of a toll, had related the government's ready trial obligation to the time of arrest, Judge Owen distinguished the case before him in terms equally applicable to the situation of the Lopez defendants here.

"Even, however, if further disabilities were required beyond the fact of arrest, the fallacy in the government's position is that the defendant here was subject to just such disabilities from the time of arrest. She had her apartment searched, property confiscated, was taken to DEA headquarters, was not free to leave, and was extensively questioned. She was clearly subject to further restraints at the government's pleasure. To find that this was insufficient because she was not placed under 'the constraints of a formal document,' is a disregard of substance." (*Beberfeld, supra,* 408 F.Supp. at 1124–25.)

The Court agrees with the rationale of *Beberfeld* and finds it to be applicable to the situation of the Lopez defendants in this case. Here, federal agents seized $8,000 in cash from the apartment of two citizens. The Lopez' were arrested, taken before a judicial officer, and arraigned on a criminal complaint charging them with federal felonies. For reasons not apparent to them, five days later the complaint was dismissed; nevertheless, the government refused to return to them the monies seized. Following efforts of counsel, a civil action was commenced to recover the funds. Shortly thereafter, the defendants were indicted for the same offenses with which they had been charged seven months earlier. This sequence of events indicates more than the usual disabilities associated with arrest. Under the circumstances, the Lopez defendants' status after the complaint was dismissed could hardly be compared to that of "any other citizen".

Rather, not only were they under the continuing cloud of a criminal investigation (evidenced in part by the government's refusal to release their funds), but without

awareness of the fact, they were the subjects of an ongoing criminal prosecution for the same crimes with which they had been charged in April 1976. Indeed, unlike the situation in *Flores*, here the government did not dismiss the criminal complaint in order to gain time to gather further evidence against the Lopez defendants; the government already had the testimony of Lindsley, and her cooperation had already led to the arrest of the Lopez' and the seizure of the narcotics. As stated by the prosecutor, the Lopez' case was originally dismissed "*solely* for the purpose of protecting Lindsley and the confidentiality of her status." Since the prosecutor did not delay the Lopez' prosecution for lack of vital evidence, this case does not fall under the holding set forth in *Flores*.

The circumstances of this case present an instance where the government does not seek to avail itself of the tolling provisions of the Speedy Trial Plan in order to secure cooperation from those charged, see *United States v. Valot*, 481 F.2d 22 (2d Cir. 1973), or to build a case against the defendants through the cooperation of another, see *United States v. Flores, supra,* or to supersede an indictment already outstanding; see *United States v. McLean, supra.* Rather, here, the government's admitted sole reason for not proceeding against the Lopez defendants was its desire to keep concealed the informer status of co-defendant Lindsley. If the government's position here was sustained, it could obtain at will an open-ended toll of the requirements of the Speedy Trial Plan solely upon its desire to conceal the existence of an informer or cooperating co-defendant. "If there [was] anything [the Rules were] not intended to cover, it is the blanket type of exclusion proposed by the Government here." *United States v. Furey,* 500 F.2d 338, 343 (2d Cir. 1974).

Also, here the government is in violation of *two* of the time requirements of the Plan. Not only was the government not ready to proceed to trial within 180 days of the Lopez' arrest, as required by Rule 7, but

**386**

more fundamentally, it had failed to seek an indictment of the Lopez defendants within sixty days following July 1, 1976. This is not a case where the defendants knew they were under indictment and were unable to obtain a trial; here, the Lopez defendants were no longer even formally charged with an offense, yet, in fact, the government was still prosecuting them. Further, the fact that the Lopez defendants were indicted within weeks of the commencement of their civil action to recover the cash funds does not cast in any more favorable light the actions of the government herein.

■■ Accordingly, the Court concludes that the government has failed, with respect to the Lopez defendants, to comply with Rule 4 and Rule 7 of the Plan. Further, under the circumstances presented, this Court concludes that the seven month delay between arrest and indictment constituted "undue delay" under Rule 48(b) Fed. R.Cr.P. See *United States v. Aberson,* 419 F.2d 820 (2d Cir.), *cert. denied,* 397 U.S. 1066, 90 S.Ct. 1497, 25 L.Ed.2d 687 (1970). Accordingly, the only questions remaining are whether the delay was due to "excusable neglect" and whether the indictment should be dismissed with or without prejudice.

The prosecutor cites a series of cases for the proposition that an indictment should not be dismissed when the delay, although impermissible, was due to the good faith belief of the Assistant that the time provisions of the Plan were being tolled. See *United States v. Johnson,* 525 F.2d 999 (2d Cir. 1975); *United States v. Furey, supra; United States v. Bowman,* 493 F.2d 594 (2d Cir. 1974). Indeed, in cases where the legal questions have raised first impression issues, courts have refrained from dismissal of the indictment and have instead required the government to proceed to trial within ten days. See *United States v. Beberfeld, supra.* However, the same decisions also have repeatedly warned the Office of the United States Attorney that "this decision does not mean that a similar practice . ..

will be countenanced in the future." *United States v. Bowman,* 493 F.2d at 598; *United States v. Beberfeld, supra,* 408 F.Supp. at 1126.

■ The motions by the Lopez defendants certainly do not present an issue of first impression. Less than two months prior to the arrest of the defendants herein, Judge Owen of this Court had rendered his decision in *Beberfeld,* upon facts nearly identical to those here. That decision was never appealed; and the government must be considered to have been on notice of it; indeed, the decision is cited in the government's papers submitted on this motion. The Court cannot conclude that the actions of the government with respect to the Lopez defendants were the result of "excusable neglect". Accordingly, Rule 11 of the Plan mandates that the dismissal shall be with prejudice.

■ Applying the statutory test set forth in 18 U.S.C. § 3162 to the same question, the Court is compelled to reach the same result. While the crimes charged in this case are serious ones, the circumstances of the case which lead to the dismissal of the indictment with respect to the Lopez defendants present a sequence of events which could place the administration of the Speedy Trial Plan in the hands of the prosecutor rather than in the hands of the courts. Further, while the Court need not conclude that the government here has engaged in intentional circumvention of the requirements of the Rules, the chronology could all too easily provide a cover for "devious behavior by [government attorneys] pressed with heavy case loads . . .." *United States v. Flores, supra,* 501 F.2d at 1359 n. 3. Finally, in applying the third standard set forth in the Speedy Trial Act, 18 U.S.C. § 3162(a)(2), the Court concludes that to allow a reprosecution of this case would be to remove from the Plan and the Act the only effective sanction afforded to the courts in such matters. Accordingly, the administration of justice is best served by putting the government on notice that it

cannot attempt to be excused here for that which Judge Owen had already ruled was impermissible in *Beberfeld,* without facing the risk of the ultimate sanction of dismissal.

■■■ Responsibility for overseeing compliance with the time limitations of the Speedy Trial Act and the district plans must lie with the trial court in the first instance. A technique which operates to violate the time requirements of the Plan even before the case is assigned to an individual judge subverts this judicial responsibility by presenting to the judge à case already encumbered by a speedy trial disability. See *United States v. Beberfeld, supra,* 408 F.Supp. at 1123. Accordingly, applying the institutional sanction which Congress has mandated under such circumstances, the Court grants the motion of Gladys and Angel Lopez to dismiss with prejudice the indictment as against them.

Since defendant Lindsley through her own conduct in offering to cooperate with the federal agents may have caused the delay attendant to her case and since she was placed under no comparable restraint of person or property, the Court is of the view that her motion to dismiss pursuant to the Speedy Trial Plan presents a different issue. The crucial issue to be confronted as to the defendant Lindsley is whether the purposes of the Rules are perverted by a defendant's promises of cooperation followed by a turnabout and a motion to dismiss based upon delay the movant herself has created. See *United States v. Valot,* 481 F.2d 22 (2d Cir. 1973).

Defendant Lindsley also claims that her waiver of arraignment was not a willing one; however, the Court concludes that this issue cannot be resolved without a hearing. Accordingly, the Court reserves decision on Lindsley's motion and sets the matter down for a hearing at the commencement of trial on January 31, 1977 at 9:30 a. m.

In light of the dismissal with prejudice of the indictment as against Angel and Gladys Lopez, the Court does not address the Lopez' motions to suppress and for a severance.

Decision is reserved on the motion of defendant Jacqueline Lindsley. The motions of defendants Angel Lopez and Gladys Lopez are hereby granted and the indictment with respect to them is hereby dismissed with prejudice.

SO ORDERED.

## SUPPLEMENTAL MEMORANDUM

■■■ On January 26, 1977, the Court reserved decision on the motion of defendant Lindsley to dismiss the indictment herein for violations of the Speedy Trial Plan, and set the matter down for a hearing today on the question of whether defendant's waiver of arraignment was a knowing one. Having considered the matter since the issuance of the January 26, 1977 decision, the Court now concludes that the question of whether or not the waiver was a knowing one is irrelevant to the issue of whether or not the indictment should be dismissed under the Speedy Trial Plan. Accordingly, the Court concludes that no hearing is necessary and further, that Lindsley's motion should be denied.

In her moving papers and in her reply papers, defendant does not argue that the indictment should be dismissed simply because her waiver of arraignment was allegedly not knowing; rather, at all junctures, defendant has argued that the fact that the waiver was allegedly invalid means that the government was still under the various time requirements of the Plan and that there was no toll. The caselaw is to the contrary.

■■■ There is no dispute that Lindsley agreed to cooperate with the government, nor that this indictment was filed after her active cooperation ceased. The cooperation was the cause of the delay. Under *United States v. Valot,* 481 F.2d 22 (2d Cir. 1973), no further inquiry is necessary. As Judge Moore wrote for the panel in that case, the fact of cooperation is the controlling factor.

"Appellant has conceded his promise of cooperation. *This is the only relevant fact.* To give him an opportunity to fulfill his promise, he was released on his own recognizance. He had a mission, namely, to assist the government in enforcing the drug laws. This might have taken a week, a month, or a year to accomplish. For the appellant even to claim that the period of cooperation applies to the Speedy Trial Rules offends reason; to use his own unconscionable perfidy as a basis for such a claim is even worse." (*Valot, supra,* 481 F.2d at 25) (emphasis supplied).

Subsequent decisions do nothing to alter the *Valot* principle. Defendant Lindsley, although taken into custody upon her arrest, was released from restraint the same evening. The government did not search her home, nor was any property of this defendant seized. Thus, following the release, she was in a position no different from that of any other person who has been arrested and released. See *United States v. Flores,* 501 F.2d 1356, 1360 (2d Cir. 1974); *compare United States v. Beberfeld,* 408 F.Supp. 1119, 1124 (S.D.N.Y.1976).

In *Beberfeld, supra,* Judge Owen did conduct a hearing on the question of whether a waiver of arraignment was knowingly made; the court in that case concluded that the waiver was voluntary but invalid for public policy reasons. There was no discussion of what result would have followed from a finding that the waiver was involuntary. In *Beberfeld,* despite his finding that the waiver was invalid, Judge Owen nevertheless denied the dismissal motion on the ground, *inter alia,* that defendant's own offers of cooperation had caused the delay. Like Judge Moore in *Valot,* Judge Owen

strongly disapproved of the notion that a defendant could delay prosecution by a promise of cooperation and then turn about and move to dismiss under the Speedy Trial Plan.

"Permitting the defendant to evade prosecution through this type of gamesmanship is not in the public interest. Rather, '[s]uch an untoward result would undermine public confidence in the adjudication of criminal cases—the touchstone of the Plan.'" (*Beberfeld, supra,* 408 F.Supp. at 1126, quoting *United States v. Knight,* 529 F.2d 594, 598 (2d Cir. 1975).)

Accordingly, it is clear to this Court that the indictment as against Lindsley should not be dismissed. To impose any lesser sanction upon the government—such as requiring it to proceed to trial in ten days— would be meaningless here, since the government has been ready to proceed since December 29, 1976.

Accordingly, the Court need not, and does not, pass upon the question of whether the waiver of arraignment was knowing. For the reasons set forth above, the motion to dismiss is denied in all respects.

SO ORDERED.