**UNITED STATES of America**

v.

**Donald HILLEGAS, Defendant.**

**No. 77 Cr. 766 (CHT).**

United States District Court,
S. D. New York.

Dec. 15, 1977.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., by Allen R. Bentley, Asst. U. S. Atty., New York City, for the Government.

Mark Lemle Amsterdam, New York City, for defendant.

## MEMORANDUM

TENNEY, District Judge.

By Notice of Motion filed November 11, 1977, defendant Donald Hillegas seeks an order of this Court that this indictment against him be dismissed pursuant to the Plan for Prompt Disposition of Criminal Cases of the United States District Court for the Southern District of New York ("Speedy Trial Plan" or "Plan") and the Fifth and Sixth Amendments to the United States Constitution. The defendant contends that the time limits of the Speedy Trial Plan have been exceeded and that his constitutional speedy trial rights have been violated. Because the Court concludes that the time limits of the Plan have been unnecessarily exceeded, the motion is granted and the indictment is dismissed with prejudice.

The events with which this indictment is concerned took place in April of 1974. On April 16 of that year agents of the Drug Enforcement Administration ("DEA") made two sets of arrests. At 7:00 p. m. they arrested Marc Fisher, Kenneth Meyerson and Richard Hamilton in a Greenwich Village restaurant and seized 2,000 doses of LSD. Meyerson agreed to cooperate by introducing the agents to his source and arranged a meeting for later that evening at another Village restaurant. At 11:20, Meyerson, together with an undercover agent, met with Fredric Glenn and Adolph Rivera, and a sale of 5,000 doses of LSD took place, after which Glenn and Rivera were arrested. The following day, April 17, Glenn and Rivera independently told an Assistant United States Attorney that the defendant in this case, Donald Hillegas, was the source of the LSD. On the same day, a complaint was filed against the five arrestees, but did not name Hillegas.

Thereafter, the authorities began to search for Hillegas, but were initially unsuccessful. However, on April 23, 1974, Hillegas, having learned that he was being sought, voluntarily surrendered at the offices of the DEA. He was taken to the United States Attorney's Office, where he was briefly interviewed. The complaint previously prepared for the five individuals arrested on April 16 was amended to add Hillegas,[1] and Hillegas appeared before the Magistrate, who fixed bail at $5,000 personal recognizance bond to be secured by $500. Hillegas was released upon deposit of cash security, and the case was set down for preliminary examination on May 14, 1974. That examination was adjourned two weeks; the entry for May 28, 1974 on the Magistrate's Criminal Calendar states that the complaint was "dismissed," a fact which neither the Government nor the defendant has called to the Court's attention.

On July 18, 1974, Indictment 74 Cr. 675 was handed down against Fisher, Meyerson, Glenn and Rivera, charging both conspiracy and various substantive counts of distribution and possession of LSD with intent to distribute. Hillegas was not named in the indictment. On July 13, 1974, the Assistant United States Attorney submitted to the Magistrate a "dismissal slip" recommending the dismissal of the complaint against Hillegas, a somewhat curious request considering the entry on the Magistrate's Calendar of some six and one-half weeks earlier. In any event, it would appear that at some time between late-May and mid-July the Government decided not to prosecute Hillegas any further. It is alleged that this decision was based on the unavailability as witnesses of Glenn and Rivera, the two individuals closest to Hillegas, their alleged "source." The Government explains:

"Between the arrest of Hillegas and the indictment of Fisher, Meyerson, Glenn and Rivera, Assistant United

1. The second page of the two-page complaint was also changed somewhat; two of the previous three overt acts were merged, and the "deponent's sources" were changed to include mention of Hillegas and to delete statements concerning observations and oral reports.

States Attorney Nesland learned that Glenn and Rivera had decided to litigate their guilt or innocence. Glenn and Rivera thus could not give testimony at a trial of Hillegas, for in doing so that they would inevitably provide damaging evidence of their own guilt. Since the out-of-court post-arrest statements of Glenn and Rivera were inadmissible, *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *cf. Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), without the testimony of Glenn and Rivera, the Government could not even make out a *prima facie* case against Hillegas. . . . " Government Memorandum 6.

The history of the prosecution of Indictment 74 Cr. 675 is long and circuitous and need not be set out in detail here. With respect to Glenn and Rivera, the two individuals whose testimony the Government alleges was essential to any case against Hillegas, the prosecution was drawn out over the next two years. Glenn ultimately pled guilty on October 6, 1975 to two of the four counts with which he was charged; he was sentenced on January 6, 1976, at which time the remaining two counts were dismissed. On July 30, 1976, the Government received authorization from the Department of Justice to seek an order of immunity for Glenn pursuant to 18 U.S.C. §§ 6002–03. Rivera, after lengthy litigation of his motions to suppress evidence, ultimately pled guilty to one count of the indictment on October 18, 1976 and was sentenced on November 18, 1976.[2]

In October 1977, some 21 months after Glenn was sentenced, 14 months after the Government received authorization to seek an immunity order for Glenn and 11 months after Rivera was sentenced, the Government took its case against Hillegas to the grand jury. Rivera testified on October 14, Glenn on October 17 and the agent who arrested them on October 18. The indictment currently under consideration was

filed on October 21, 1977; Hillegas was arraigned on October 27 and entered a plea of not guilty. The case was assigned to this Court, and the Government filed a notice of readiness for trial on November 21, 1977.

■ In his motion to dismiss, the defendant relies primarily on the time limits contained in this district's Speedy Trial Plan. Section 3(a) of the Speedy Trial Plan provides in pertinent part:

"*Time Limits.* If an individual is arrested or served with a summons and the complaint charges an offense to be prosecuted in this district, any indictment or information subsequently filed in connection with such charge shall be filed within the following time limits:

(1) If the arrest or service occurs before July 1, 1976, within 60 days of July 1, 1976."

Section 7 further provides:

"Notwithstanding any longer time periods that may be permitted under sections 3, 4, and 5, in all cases the government must be ready for trial within six months from the earliest of the following dates:

(a) The date on which the defendant is arrested;

(b) The date on which the defendant is served with a summons; or

(c) The date on which a complaint, indictment, or information is filed, *except* when a sealed indictment is filed, the date on which the indictment is unsealed."

There can be little doubt that if these limits are applied literally both have been exceeded in this case. With respect to Section 3(a), the Plan mandates that by August 30, 1976 an indictment should have been filed "in connection with" the April 23, 1974 complaint on which the defendant was arrested. There is no doubt that the indictment filed on October 21 in this case was "in connection with" the complaint filed on April 23,

---

2. The Government filed a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure challenging the sentence. The motion was denied in January 1977; the Government alleges that it was considering an appeal until February 10, 1977, when it decided not to appeal. Affidavit of Allen Bentley, sworn to November 28, 1977, ¶ 28.

1974: the conspiracy charged in the indictment is virtually identical to that charged in the complaint, with the exception that more overt acts are alleged in the indictment. Indeed, the Government has made no attempt to distinguish the *conspiracy* count of the indictment from the complaint. Rather, on this point the Government argues that Hillegas was never arrested on the *substantive* count of the indictment and that "under no circumstances should the [Plan] be held to require dismissal of that count." Government Memorandum 5 n.*. For this proposition they cite a double jeopardy case, *United States v. Cheung*, 555 F.2d 1069 (2d Cir. 1977). The Government's argument is inverted, however. The Plan does not look backward in time from the point of an indictment and ask on what charges was the defendant arrested; rather, it looks forward from the time of arrest and complaint and commands that any indictment filed "in connection with" that charge be filed within a certain time period. Here, the substantive count charged in the indictment grows out of the identical transactions on which the conspiracy charge of the complaint was based. Indeed, this complaint—with its sole charge of conspiracy— gave rise to Indictment 74 Cr. 675, which contained three substantive counts and one conspiracy count. Finally, the complaint states that Hillegas was the "source of the LSD," thereby encompassing the essence of the substantive count. Under these circumstances, both the conspiracy count and the substantive count of Indictment 77 Cr. 766 must be considered to be "in connection with" the complaint of 1974.

In its attempt to evade the impact of the Speedy Trial Act and Plan, the Government places its main reliance on *United States v. Flores*, 501 F.2d 1356 (2d Cir. 1974). In that case the court of appeals held that the dismissal of a complaint against an individual should act to toll the rule then prevailing in the Eastern District of New York that the Government be ready for trial within six months "from the date of arrest, service of summons, detention or the filing of a complaint or a formal charge, whichever is earliest" ("six-month rule"). *Id.* at

1358–60. The court based this rule on its conclusion that during such a period the individual

"was not subject to any of the disabilities associated with being under arrest, the subject of a complaint or indictment, or in the midst of a criminal prosecution. He was under no more jeopardy than any other citizen, and the fact that he might have been under investigation has no more effect after the dismissal on the running of the six-month period than it would have had before his arrest, that is, none." *Id.* at 1359–60.

Nevertheless, the court of appeals reversed the conviction and remanded the case for a further hearing because the Government appeared to have violated the six-month rule even after exclusion of the time between the dismissal of the complaint and the filing of the indictment. *Id.* at 1360.

This Court concludes, however, that *Flores* does not compel a denial of the defendant's motion. That case was decided in 1974, before the effective date of the Speedy Trial Act of 1974 ("Speedy Trial Act"), 18 U.S.C. §§ 3161–74, and the promulgation, pursuant to the statute, of the Speedy Trial Plan. Unlike its predecessor which was in effect in 1974 and applied in *Flores*, the current Speedy Trial Plan contains a number of time limits, all established pursuant to congressional directive, in addition to the six-month rule described above. These limits delineate exact and ever-diminishing time periods within which the basic components of a criminal case—indictment, arraignment, trial—must be accomplished. To allow for the vicissitudes of a criminal prosecution the statute establishes a number of types of delay which may be excluded from computation of the various time periods. 18 U.S.C. § 3161(h). The Plan is specific in its adoption of these provisions as the *sole* source of excludable time: "In computing any time limit under sections 3, 4, 5, 6, or 7, the periods of delay set forth in 18 U.S.C. § 3161(h) shall be excluded. . . . Periods of delay are excludable *only* as provided in the Speedy Trial Act of 1974." Speedy Trial Plan

§ 10(a) (emphasis added). In the face of so explicit a directive, the Court feels constrained to look to the statute rather than to the *Flores* case.

■ Furthermore, basing so important a tolling period upon the "dismissal" of a criminal complaint, as the *Flores* court did, poses certain practical if not theoretical problems which were not mentioned by the *Flores* court but whose presence in the instant case leads this Court to question the *Flores* rule. In this case the Court has the option to choose from among three dates as the "date" of dismissal: May 28, 1974, the date on which a dismissal was noted on the Magistrate's Criminal Calendar; July 13, 1974, the date on which the Assistant United States Attorney requested the Magistrate to dismiss the complaint by means of the informal "dismissal slip"; and July 19, 1974, the date on which the defendant's bail was exonerated. A procedure as informal and inexact as that by which this complaint was "dismissed" is not a sufficiently solid base upon which to build a clear tolling rule.

The Government asserts, however, that the continued vitality of *Flores* is demonstrated by two recent decisions. In *United States v. Carini*, 562 F.2d 144 (2d Cir. 1977), the court of appeals did cite *Flores* but solely for the proposition that "the requirements of [a district court's speedy trial plan] must be followed strictly." *Id.* at 146 n. 1. Certainly this citation affirms that aspect of *Flores* which found the Government *in violation* of the six-month rule rather than that portion which found dismissal of the complaint to toll that rule.

*Flores* was also cited by Judge Pierce of this court in *United States v. Lopez*, 426 F.Supp. 380 (S.D.N.Y.1977). Judge Pierce concluded that "the general principle enunciated in *Flores* should be applied," *id.* at 384, but only as modified by the decision of *United States v. Beberfeld*, 408 F.Supp. 1119 (S.D.N.Y.1976). Although the latter case, unlike *Lopez* and *Flores*, did not consider the possible tolling effect of the *dismissal* of the complaint, Judge Owen in *Beberfeld* analyzed a claim under the Plan

by looking to the restraints and disabilities under which the defendant was placed during the period under consideration. *Id.* at 1124. In *Lopez*, Judge Pierce undertook a similar analysis, concluding that "not only were [the defendants] under the continuing cloud of a criminal investigation (evidenced in part by the government's refusal to release their funds [seized during arrest]), but without awareness of the fact, they were the subjects of an ongoing criminal prosecution for the same crimes with which they had been charged" in the original complaint. 426 F.Supp. at 385. Thus, further doubt is cast on the validity of *Flores* by the fact that Judge Pierce reached his conclusion notwithstanding the *Flores* pronouncement in that the continuing investigation of the defendant following the dismissal had *no effect* on the defendant and therefore would not disturb the tolling of the six-month rule. 501 F.2d at 1360.

Furthermore, in *United States v. Koch*, 438 F.Supp. 307 (S.D.N.Y.1977), Judge Brieant of this court found, under circumstances very similar to those of the instant case, that the limits of the Speedy Trial Plan had been exceeded and dismissed the indictment. In *Koch* the complaint had been dismissed, with a lack of precision similar to that evident in this case, sometime in mid-March of 1976; the indictment was filed on August 26, 1977. Even though Judge Brieant found that "[n]o more than the usual prejudice generally associated with delay resulted to defendant," *id.* at 309, he dismissed the indictment with prejudice for failure to comply with section 3(a)(1) of the Speedy Trial Plan and did not cite *Flores*.

■ Beyond the serious doubts which this Court has concerning the continued vitality of the *Flores* rule itself, the Court is loathe to apply that rule in this case where the disregard of the applicable time limits is of a much graver nature than in *Flores* or any of the other cases cited above. More than three *years* elapsed between the dismissal of the complaint and the filing of the indictment here; the comparable periods lasted less than four months in *Flores*, 17

months in *Koch* and seven months in *Lopez.* Furthermore, in the instant case the delay was allegedly due to the unavailability of Glenn and Rivera, the only witnesses who could make out a case against Hillegas. Yet, Glenn was available to testify at least 14 months before he went before the grand jury, and Rivera was available for at least eight months previous to his testimony. In *Flores* a mere six weeks passed between the time that an important witness was said to be cooperating and the appearance of that witness before the grand jury. 501 F.2d at 1358.

█ In this case the Government had the option of seeking an indictment within 60 days of July 1, 1976, pursuant to section 3(a)(1) of the Speedy Trial Plan. Within that period the Government had received authority to seek an immunity order for Glenn, and it is entirely conceivable that the grand jury would have returned an indictment against Hillegas if Glenn had testified as indicated in the Government's affidavit. Affidavit of Allen Bentley, sworn to November 28, 1977, ¶ 6 ("Bentley Affidavit"). At that point the Government could have sought an exclusion due to a delay "resulting from the . . . unavailability of . . . an essential witness," 18 U.S.C. § 3161(h)(3)(A), if it had been necessary. The statute clarifies that exception by providing that "an essential witness shall be considered unavailable whenever . . . he resists appearing . . . for trial." *Id.* § 3161(h)(3)(B). Such an exception is applicable to the time within which an indictment is required to be filed, the time between indictment and arraignment or the time between arraignment and trial. Speedy Trial Plan § 10(a). The failure of the Government to seek excludable time under this provision is understandable, however, in view of the amount of time which passed between Glenn and Rivera becoming available and their testimony before the grand jury. Moreover, the Government has not alleged that either Glenn or Rivera was "resisting" an appearance, but merely that "the Government never received any indication that either Glenn or Rivera would waive his Fifth Amendment privilege and testify about the involvement of Hillegas." Bentley Affidavit at 11, n.**. Hillegas's attorney states, however, that he was informed "by both Mr. Glenn and his attorney . . . that *at no time* did the government ever ask if Mr. Glenn would testify, nor was Mr. Glenn ever given a subpoena to testify prior to the subpoena related to his October, 1977 appearance," Affidavit of Mark Lemle Amsterdam, sworn to December 6, 1977, ¶ 3 (emphasis in original), and that he was "further advised by Mr. Glenn that he was always available to testify before the grand jury and would not have exercised his Fifth Amendment rights." *Id.* ¶ 4.

█ The finding that the time limits of the Speedy Trial Plan were surpassed does not automatically lead to a dismissal of the complaint, however. Section 11(e) states that "failure to comply with the time limits prescribed herein shall not require dismissal of the prosecution. The court retains the power to dismiss a case for unnecessary delay pursuant to rule 48(b) of the Federal Rules of Criminal Procedure." The length of the unexplainable delays in bringing this case before the grand jury, particularly when seen in the light of the clear directions of the Speedy Trial Act and Plan, marks these delays as "unnecessary." Furthermore, the Court sees no reason why this dismissal should be without prejudice and finds the discussion of Judge Pierce on this subject to be fully applicable to this case. *United States v. Lopez, supra,* 426 F.Supp. at 386–87.

The defendant has also challenged the indictment under the speedy trial aspects of the fifth and sixth amendments. Because the Court finds application of the Speedy Trial Plan to be fully dispositive of this matter, these alternative grounds for decision need not be considered.

Accordingly, Indictment 77 Cr. 766 is dismissed with prejudice.

So ordered.