UNITED STATES of America, Appellee,

v.

Orlando FRANCHI–FORLANDO,
Defendant, Appellant.

No. 86–1969.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1987.

Decided Feb. 3, 1988.

Rafael F. Castro–Lang, San Juan, P.R., by Appointment of the Court, for defendant, appellant.

Jose R. Gaztambide, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief for appellee.

Before CAMPBELL, Chief Judge, TIMBERS,[*] Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

The appellant, Orlando Franchi–Forlando, is an Italian citizen, living in Colombia. He was flying on Iberia Airlines from Colombia to Spain when his airplane made a scheduled stop in San Juan, Puerto Rico. He went to the "in-transit" lounge at the airport. A United States Customs Service officer boarded the aircraft and inspected the luggage in the baggage hold. Noting that one of the suitcases (with a false bottom) looked suspicious, the officer poked it with a probe. He found cocaine. He then took the suitcase to the in-transit lounge and confronted the appellant. Appellant admitted the suitcase was his. The officer arrested him.

On the basis of these facts, a jury convicted Franchi–Forlando of (1) unlawfully importing cocaine into the United States, 21 U.S.C. § 952(a) (1982); (2) possessing the

---

[*] Of the Second Circuit, sitting by designation.

cocaine with intent to distribute it, 21 U.S.C. § 841 (1982); and (3) unlawfully possessing cocaine on an aircraft "arriving in" the United States without proper listing in the aircraft's documents, 21 U.S.C. § 955 (1982). The district court sentenced Franchi–Forlando to three fifteen-year prison terms, one on each count, to run concurrently. Franchi–Forlando appeals. We affirm his convictions.

■ 1. Appellant first argues that these facts do not show that he intended to import the cocaine into the United States, for, in his view, the government failed to prove that he knew that his plane would stop in United States customs territory. This court recently and specifically held, however, in *United States v. Mejia–Lozano*, 829 F.2d 268 (1st Cir.1987) that the government does not have to prove that a defendant in appellant's position knew that the plane would stop in the United States. In *Mejia–Lozano* the court wrote that the facts "that the defendant knowingly possessed the contraband and [in fact] brought it into the jurisdiction of the United States" permit conviction under § 952(a) (which prohibits the importation of narcotics or other controlled substances), and that *"[n]othing in 952(a) makes the accused's knowledge that she was landing on American soil, or her intent to do so, an element of the offense." Mejia–Lozano*, 829 F.2d at 271 (emphasis added). *Mejia–Lozano* requires that we rule against appellant on this point. Regardless, we believe that the jury could conclude from the facts that the trip was long, the stops were few, and the stop was scheduled that appellant knew he would land in the United States.

■ 2. Appellant also argues that the customs officer's search of his suitcase was unlawful. He concedes that in *United States v. McKenzie*, 818 F.2d 115 (1st Cir. 1987) we upheld a virtually identical search. We pointed out that a statute, 19 U.S.C. § 1496 (1982) (*see* Appendix A) authorizes customs officers to search baggage of any person arriving in the United States in order to ascertain what articles are contained therein and whether subject to duty, free of duty, or prohibited notwithstanding a declaration and entry therefor has been made.

In addition, another statute, 19 U.S.C. § 1581(a) (1982) authorizes customs officers to "board any vessel or any vehicle at any place" in U.S. customs territory, to "examine the manifest" and other documents, and to "search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board." We added, in *McKenzie*, that the relevant customs regulation, 19 C.F.R. § 162.5 (1987) encompasses searches of this sort. It says that

> [a] customs officer may stop any vehicle and board any aircraft arriving in the United States from a foreign country for the purpose of examining the manifest and other documents and papers and examining, inspecting, and searching the vehicle or aircraft.

Appellant claims, however, that in *McKenzie* we overlooked a different statute and two different regulations which he finds controlling. The statute to which appellant refers is 19 U.S.C. § 1467 (1982) and the regulations are 19 C.F.R. §§ 148.-21, 162.6 (1987). The statute permits a customs officer to "search ... persons, baggage, and merchandise discharged or unladen" from incoming vessels. Appellant argues that his suitcase was not "discharged or unladen," hence the customs officers could not search it. Appellant's argument may show that § 1467 does not authorize the search; but that is beside the point for the two other statutes we just mentioned, namely, § 1496 and § 1581(a), provide statutory authority for the search.

■ Appellant goes on to discuss customs regulation 19 C.F.R. § 148.21(a) (1987). It says the following:

> (a) *Customs officers are not to open.* Customs officers shall not open baggage or other containers, nor unlock vehicles or compartments thereof for the purpose of examination, but shall detain them until the owner, his agent, or the person in charge of any baggage, or vehicle opens or refuses to open them.

(Emphasis in original.) The customs officer in this case, the appellant says, "opened" the appellant's "baggage" (with a probe) without giving appellant the opportunity to do so himself, as the regulation requires. This regulation, however, is also beside the point. The customs officer carried out the search under the authority of a different regulation (§ 162.5) which, among other things, allows searches of aircraft that stop in the United States customs territory only briefly and then travel elsewhere. Such aircraft may keep luggage subject to search in their holds, perhaps mixed with other packages or freight.

The regulation to which appellant points, § 148.21, is one of a set of provisions (19 C.F.R. §§ 148.0—148.116 (1987)) which, read in a natural way, seem not to apply to "in-transit" baggage, but rather apply to baggage accompanying passengers who pass through customs in order to disembark and spend time in the United States. *See* 19 C.F.R. § 148.0 (1987) (defining scope of § 148). Of course, the regulations' language need not be read so restrictively; one *might* read them to apply as well to luggage that remains in an in-transit aircraft. But it is primarily up to an agency, not to a court, to interpret the agency's own regulations, *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980), and recent practice shows that the Customs Service does not read the restriction of § 148.21 as applicable to searches authorized by § 162.5 of in-transit aircraft.

Finally, appellant points to regulation 19 C.F.R. § 162.6 (1987), which says that "special agents ... are authorized to ... search [baggage] under" 19 U.S.C. § 1467; and, as mentioned above, that statute refers only to "luggage ... discharged or unladen." But, as we also just said, neither this statute nor this regulation governs the search here at issue. Since none of the statutes or regulations that appellant cites forbids the search and since other statutes and regulations authorize it, 19 U.S.C. §§ 1496, 1581 (1982); 19 C.F.R. § 162.5 (1987), we need not consider the evidentiary consequences of any failure to comply with relevant agency regulations. *See United*

*States v. Caceres*, 440 U.S. 741, 749–55, 99 S.Ct. 1465, 1470–73, 59 L.Ed.2d 733 (1979).

■ 3. Appellant argues that the cocaine admitted at trial was not properly authenticated, that is to say, the government failed to show that the packets of cocaine (real evidence) had not been "altered in any material respect since the time of the crime." *United States v. Luna*, 585 F.2d 1, 6 (1st Cir.) (citations omitted), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed. 2d 157 (1978). The customs officer who seized the cocaine, however, testified that he initialed two of four small bags and a larger bag in which the two other small bags were contained; and that he handed them to a second officer. The second officer testified that she received the bags from the first officer, initialed all four small bags and sent them to the chemist. The chemist testified that he received four small sealed bags with a laboratory serial number on them, that he placed his initials on them, tested the contents, resealed the bags, and returned them to the evidence custodian. The second customs officer and the chemist testified at the trial that they recognized the bags introduced at the trial because all four bags bore their initials; two of them bore the initials of the first officer as well.

The testimony of the first and second officers shows that the second officer received the bags from appellant's luggage; the second officer's recognition of her initials on the trial exhibits shows they were the seized bags, and the chemist's recognition of his initials (and the seals) shows the bags contained the substance that he tested. In order to decide whether to admit the exhibits as evidence, the trial court must determine whether there is a reasonable probability that the evidence has not been altered in any material respect since the time of the crime. *United States v. Luna*, 585 F.2d at 6 (1st Cir.1978). The trial court's decision here is perfectly reasonable and well within its broad power to accept, or to reject, proffered evidence. *Luna*, 585 F.2d at 6.

■ 4. Appellant's fourth claim is that the trial judge wrongly refused to give the

following instruction, which he had requested:

> Where a defendant has offered evidence that he is a law-abiding citizen, the jury should consider such evidence along with all the other evidence in the case.
>
> Evidence of a defendant's reputation, inconsistent with those traits of character ordinarily involved in the commission of the crime charge [sic] may give rise to a reasonable doubt, since the jury may think it improbable that a person of good character in respect to those traits would commit a crime. . . .

A refusal to give a particular requested jury instruction is reversible error only if "'the instruction (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense.'" *United States v. Gibson*, 726 F.2d 869, 874 (1st Cir.) (quoting *United States v. Grissom*, 645 F.2d 461, 464 (5th Cir.1981)), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984). Here, the proposed instruction, in the context of this trial, is not "substantively correct." The instruction refers to appellant's *reputation*, not to his actual criminal record. But, the only evidence to which appellant points to justify the instruction is his own testimony that he had never been convicted of a crime, and a certificate from Colombian authorities saying that he had not been convicted of a crime during the prior six years. This evidence is not sufficient to require the court to give the requested instruction; it does not "furnish[ ] an arguable basis for application of the proposed rule of law." *United States v. Coady*, 809 F.2d 119, 121 (1st Cir.1987).

■ 5. Appellant's final contention is that his convictions on Counts I and III constituted "multiple punishments for the same offense" in violation of the double jeopardy clause of the Fifth Amendment. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). Appellant seeks dismissal of one of the two counts, arguing

that even though a dismissal would not reduce his sentence (he was sentenced to serve concurrent terms on the two counts) the redundant conviction brings with it "potential adverse collateral consequences that may not be ignored." *Ball v. United States*, 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) (citing *Benton v. Maryland*, 395 U.S. 784, 790–91, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969) and *Sibron v. New York*, 392 U.S. 40, 54–56, 88 S.Ct. 1889, 1898–99, 20 L.Ed.2d 917 (1968)).

Count I of the indictment charges appellant with violating 21 U.S.C. § 952(a), which makes it unlawful to import controlled substances or narcotics into U.S. customs territory unless importation of the substances or narcotics is approved by the Attorney General as, *e.g.*, necessary for "medical, scientific or other legitimate purposes." §§ 952(a)(1), 952(a)(2)(A), 952(a)(2)(B); *see generally* Appendix B. Count III of the indictment charges appellant with violating 21 U.S.C. § 955, which makes it unlawful

> for any person to bring or possess on board any vessel or aircraft . . . arriving in . . . the customs territory of the United States, a controlled substance in schedule I or II or a narcotic drug in Schedule III or IV, unless such substance or drug is a part of the cargo entered in the manifest or part of the official supplies of the vessel, aircraft or vehicle.

Appellant argues that Congress did not intend courts to impose separate punishment upon a defendant whose single act violates both statutes. *United States v. Valot*, 481 F.2d 22, 26–28 (2d Cir.1973); *United States v. Tonarelli*, 371 F.Supp. 891, 892–93 (D.P.R.1973). And, he adds that the double jeopardy clause of the federal Constitution, U.S. Constitution, Amend. V, prevents a court from imposing multiple punishments if Congress intended for only one to apply. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

To determine what Congress intended in respect to multiple punishments, "[t]he applicable rule [of construction] is that where the same act or transaction constitutes a violation of two distinct statutory provi-

sions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (citation omitted). *See also Ball,* 470 U.S. at 861–63, 105 S.Ct. at 1671–72; *Albernaz v. United States,* 450 U.S. 333, 337–44, 101 S.Ct. 1137, 1141–45, 67 L.Ed.2d 275 (1981). The statutory provisions satisfy the *Blockburger* criterion. Section 952(a) is primarily an importation statute; it forbids those importations of controlled substances that the Attorney General has not *approved* as, *e.g.,* "necessary to provide for the medical, scientific, or other legitimate needs of the United States." Section 955 is, in part, a documentation statute; it forbids the undocumented importation of both unapproved and approved controlled substances. To violate § 952(a), the importation must be an *unapproved* importation (*i.e.,* an importation of drugs not for legitimate purposes); to violate § 955, the importation must be *improperly documented.* If one imports an approved but improperly documented drug, one violates § 955 but not § 952(a); if one imports an unapproved but properly documented drug, one violates § 952(a) but not § 955.

We believe these differences in the two statutes significant here for the following reasons. First, the language of the two statutes makes a considerable point of the difference. Section 955 makes clear that a violation consists of not just importation but also failure to "enter" the imported substance in the carrier's "manifest" (unless it is part of the carrier's "official supplies"); section 952(a) elaborates at length upon the circumstances under which importation of a "controlled substance" is lawful.

Second, the legislative history suggests that Congress saw § 955 as applying to importation of both approved and unapproved drugs. Both statutory provisions form part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, 84 Stat. 1242. Section 952(a) finds its origin principally in a 1909 statute (Act of February 9, 1909, ch. 100, 35 Stat. 614, *repealed by* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 1101(a)(2), 84 Stat. 1236, 1291) that made it illegal to import narcotic drugs not previously approved by the Commissioner of Narcotics. Section 955 dates back to Rev.Stat. § 2809 (1875) (codifying Act of March 2, 1799, ch. 110, § 24, 1 Stat. 627, 646, *repealed by* Tariff Act of 1922, Pub.L. No. 67–318, § 642, 42 Stat. 858, 989), which imposed a fine on *all* undocumented imports, whether of lawful items or of contraband. *United States v. Sischo,* 262 U.S. 165, 43 S.Ct. 511, 67 L.Ed. 925 (1923) (Holmes, J.). In 1914, Congress enacted a new provision, modeled after § 2809, which assessed an identical fine upon undocumented importation of lawful and unlawful opium. Act of January 17, 1914, ch. 9, 38 Stat. 275, 277, *amended by* Act of May 26, 1922, ch. 202, § 3, 42 Stat. 598, *repealed by* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 1101(a)(2), 84 Stat. 1236, 1291. (Congress had previously forbidden opium importation for nonmedicinal purposes, while permitting its importation "for medicinal purposes." Act of February 9, 1909, 35 Stat. at 614.) Like § 2809, the 1914 law assessed civil penalties. In 1922, Congress repealed § 2809, but, with slight amendment, left the 1914 statute in place. Tariff Act of 1922, Pub.L. No. 67–318, § 642, 42 Stat. 858, 989.

In writing § 955, Congress may also have looked to a 1941 statute (Act of July 11, 1941, ch. 289, 55 Stat. 584, *repealed by* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 1101(a)(9), 84 Stat. 1236, 1292), which contains language similar to § 955 but which applies only to the high seas. Just prior to 1970, the 1914 law and the 1941 statute appeared together as Sections 184 and 184a of Title 21. Congress repealed both of these sections in 1970. Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, §§ 1101(a)(2), 1101(a)(9), 84 Stat. 1236, 1291–92. Given this history, one cannot say that Congress meant § 955 to apply basically, or principally, only to the importation of unapproved drugs, those importations that § 952(a) makes unlawful. *See Sischo,* 262 U.S. at 165, 43 S.Ct. at 511.

(We have reproduced the relevant statutes in Appendix B.)

Third, the argument that the two statutes differ in their scope is not simply theoretical. The amount of drugs imported illegally into the United States is large; as to those imports, one might violate § 952(a) without violating § 955. *See* 1970 U.S. Code Cong. & Ad.News 4566. The United States also authorizes imports of over one million pounds of legal opium each year. *United Nations, Statistics on Narcotic Drugs for 1985*, Table IX, p. 83. Undocumented shipment of these drugs might cause a violation of § 955, but not of § 952(a).

Fourth, the Second Circuit in *Valot*, 481 F.2d at 26–28, and a district court in *Tonarelli*, 371 F.Supp. at 892–93, in holding to the contrary, reasoned that one could not violate § 955 without violating § 952(a), but neither court took account of the fact that § 955 covers failure to list on the manifest both unapproved (§ 952(a)) *and* approved substances. For that reason, we do not follow those cases.

Fifth, we recognize that the language that asserts the "approved drug" portion of § 952(a) and the "listed in the manifest" portion of § 955 makes them exceptions to a general rule of liability. That is to say, the statutes introduce those portions with the words "unless" and "except," and defendants may have to treat them as affirmative defenses. *See United States v. Barrios*, 457 F.2d 680, 681 (9th Cir.1972) (finding that § 952(a)'s "except" clause was an affirmative defense). Nonetheless, the language that makes the two statutes differ in scope does not refer to rare or unusual occurrences; thus, we do not see how or why the use of the words "unless" or "except" should make a difference. Indeed, *Blockburger* itself found a difference between two similar statutes based on the fact that one of them contained an affirmative defense. *Blockburger*, 284 U.S. at 299, 52 S.Ct. at 180.

In sum, each statutory provision requires proof of a fact that the other does not. *Blockburger* is satisfied, and we are to presume that "Congress was aware of the *Blockburger* rule and legislated with it in mind." *Albernaz*, 450 U.S. at 342, 101 S.Ct. at 1144. Cumulative punishments, therefore, would not violate the double jeopardy clause of the Constitution. *Blockburger*, 284 U.S. at 299, 52 S.Ct. at 180.

Of course, the fact that the Constitution would *permit* a consecutive sentence does not mean that a court must impose it. The court, in this instance, properly imposed a concurrent sentence. And, we note that the new Sentencing Guidelines will also typically require in cases similar to this one concurrent sentencing in the future. *See* United States Sentencing Commission, *Guidelines Manual*, §§ 2D1.1, 3D (1987).

The judgment of the district court is

*Affirmed.*

### TABLE OF CONTENTS TO APPENDICES

*APPENDIX A*

A–1 Customs Authority Statutes [p. 591]
19 U.S.C. §§ 1467, 1496, 1581(a) (1982)

A–2 Customs Regulations [p. 592]
19 C.F.R. §§ 148.0, 148.21, 162.0, 162.5, 162.6 (1987)

*APPENDIX B*

B–1 Current Drug Control Statutes [p. 593]
21 U.S.C. §§ 952(a), 955 (1982)

B–2 Previous Drug Control Statutes [p. 594]
Rev.St. 2809 (1875)

[p. 594] Act of January 17, 1914, ch. 9, 38 Stat. 275, 277, *amended by* Act of May 26, 1922, ch. 202, § 3, 42 Stat. 598, *repealed by* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 1101(a)(2), 84 Stat. 1236, 1291

[p. 594] Act of July 11, 1941, ch. 289, 55 Stat. 584, *repealed by* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 1101(a)(9), 84 Stat. 1236, 1292

[p. 595] 21 U.S.C. § 184 (repealed 1970)

[p. 595] 21 U.S.C. § 184a (repealed 1970)

*APPENDIX A*

A–1 Customs Authority Statutes

19 U.S.C. §§ 1467, 1496, 1581(a) (1982)

## § 1467. Special inspection, examination, and search

Whenever a vessel from a foreign port or place or from a port or place in any Territory or possession of the United States arrives at a port or place in the United States or the Virgin Islands, whether directly or via another port or place in the United States or the Virgin Islands, the appropriate customs officer for such port or place of arrival may, under such regulations as the Secretary of the Treasury may prescribe and for the purpose of assuring compliance with any law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce, cause inspection, examination, and search to be made of the persons, baggage, and merchandise discharged or unladen from such vessel, whether or not any or all such persons, baggage, or merchandise has previously been inspected, examined, or searched by officers of the customs.

June 17, 1930, c. 497, Title IV, § 467, as added June 25, 1938, c. 679, § 11, 52 Stat. 1083, and amended June 2, 1970, Pub.L. 91–271, Title III, § 301(g), 84 Stat. 288.

## § 1496. Examination of baggage

The appropriate customs officer may cause an examination to be made of the baggage of any person arriving in the United States in order to ascertain what articles are contained therein and whether subject to duty, free of duty, or prohibited notwithstanding a declaration and entry therefor has been made.

June 17, 1930, c. 497, Title IV, § 496, 46 Stat. 727; June 2, 1970, Pub L. 91–271, Title III, § 301(b), 84 Stat. 287.

## § 1581. Boarding vessels
### Customs officers

(a) Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti–Smuggling Act, or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

A–2 Customs Regulations

19 C.F.R. §§ 148.0, 148.21, 162.0, 162.5, 162.6 (1987)

## PART 148—PERSONAL DECLARATIONS AND EXEMPTIONS

§ 148.0 Scope.

This part contains the regulations governing the allowance of exemptions for residents and nonresidents arriving in the United States, for crew-members of carriers engaged in international traffic, for military and civilian employees of the United States, for certain evacuees, and for certain personnel of foreign governments and international organizations. Procedures and requirements are also set forth pertaining to registration of articles to be taken abroad, declaration and entry, and examination of baggage, and collection of duties and taxes.

### Subpart C—Examination of Baggage and Collection of Duties and Taxes

§ 148.21 Opening of baggage, compartments, or vehicles.

(a) *Customs officers not to open.* Customs officers shall not open baggage or other containers, nor unlock vehicles or compartments thereof for the purpose of examination, but shall detain them until the owner, his agent, or the person in charge of any baggage, container or vehicle opens or refuses to open them.

(b) *Refusal to open*—(1) *General.* If an owner, his agent, or the person in charge of any baggage, other container, or vehicle with a locked compartment refuses to open it, the baggage, container, or vehicle shall be treated as unclaimed.

(2) *On arrival from Canada or Mexico.* If the owner, his agent, or the person in charge of any baggage, container, or vehicle arriving from Canada or Mexico refuses to open it, it shall be opened in accordance with section 462, Tariff Act of 1930 (19 U.S.C. 1462), unless a request is received from him to make other proper

disposition. If any article subject to duty, or any prohibited article is found upon opening by a Customs officer, the whole contents and the container or vehicle shall be subject to forfeiture.

## PART 162—RECORDKEEPING, IN-SPECTION, SEARCH, AND SEIZURE

### § 162.0 Scope.

This part sets forth the recordkeeping requirements and procedures governing the examination of records and persons in connection with any audit or other inquiry or investigation conducted for the purpose of ascertaining the correctness of any entry, for determining the liability of any person for duties and taxes due or which may be due, for determining liability for fines, penalties, and forfeitures, or for insuring compliance with the laws and regulations administered by Customs. It also contains provisions for the inspection, examination, and search of persons, vessels, aircraft, vehicles, and merchandise involved in importation, for the seizure of property, and for the forfeiture and sale of seized property. It also contains provisions for Customs enforcement of the controlled substances, narcotics and marihuana laws. Provisions relating to petitions for remission or mitigation of fines, penalties, and forfeitures incurred are contained in Part 171 of this chapter.

[T.D. 72–211, 37 FR 16488, Aug. 15, 1972, as amended by T.D. 79–159, 44 FR 31970, June 4, 1979]

### § 162.5 Search of arriving vehicles and aircraft.

A customs officer may stop any vehicle and board any aircraft arriving in the United States from a foreign country for the purpose of examining the manifest and other documents and papers and examining, inspecting, and searching the vehicle or aircraft.

[T.D. 72–211, 37 FR 16488, Aug. 15, 1972]

### § 162.6 Search of persons, baggage, and merchandise.

All persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer. District directors and special agents in charge are authorized to cause inspection, examination, and search to be made under section 467, Tariff Act of 1930, as amended (19 U.S.C. 1467), of persons, baggage, or merchandise, even though such persons, baggage, or merchandise were inspected, examined, searched, or taken on board the vessel at another port or place in the United States or the Virgin Islands, if such action is deemed necessary or appropriate.

[T.D. 72–211, 37 FR 16488, Aug. 15, 1972]

### *APPENDIX B*

B–1 Current Drug Control Statutes

21 U.S.C. §§ 952(a), 955 (1982)

§ 952. Importation of controlled substances

**Controlled substances in schedules I or II and narcotic drugs in schedules III, IV, or V; exceptions**

(a) It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter, except that—

(1) such amounts of crude opium, poppy straw, concentrate of poppy straw, and coca leaves as the Attorney General finds to be necessary to provide for medical, scientific, or other legitimate purposes, and

(2) such amounts of any controlled substance in schedule I or II or any narcotic drug in schedule III, IV, or V that the Attorney General finds to be necessary to provide for the medical, scientific, or other legitimate needs of the United States—

(A) during an emergency in which domestic supplies of such substance or

drug are found by the Attorney General to be inadequate,

(B) in any case in which the Attorney General finds that competition among domestic manufacturers of the controlled substance is inadequate and will not be rendered adequate by the registration of additional manufacturers under section 823 of this title, or

(C) in any case in which the Attorney General finds that such controlled substance is in limited quantities exclusively for scientific, analytical, or research uses,

may be so imported under such regulations as the Attorney General shall prescribe. No crude opium may be so imported for the purpose of manufacturing heroin or smoking opium.

§ 955. Possession on board vessels, etc., arriving in or departing from United States

It shall be unlawful for any person to bring or possess on board any vessel or aircraft, or on board any vehicle of a carrier, arriving in or departing from the United States or the customs territory of the United States, a controlled substance in schedule I or II or a narcotic drug in schedule III or IV, unless such substance or drug is a part of the cargo entered in the manifest or part of the official supplies of the vessel, aircraft, or vehicle.

(Pub.L. 91–513, Title III, § 1005, Oct. 27, 1970, 84 Stat. 1287.)

B–2 Previous Drug Control Statutes

REV.ST. 2809 (1875)

SEC. 2809. If any merchandise is brought into the United States in any vessel whatever from any foreign port without having such a manifest on board, or which shall not be included or described in the manifest, or shall not agree therewith, the master shall be liable to a penalty equal to the value of such merchandise not included in such manifest; and all such merchandise not included in the manifest belonging or consigned to the master, mate, officers, or crew of such vessel, shall be forfeited.

Act of January 17, 1914, ch. 9, 38 Stat. 275, 277, *amended by* Act of May 26, 1922, ch. 202, § 3, 42 Stat. 598, *repealed by* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 1101(a)(2), 84 Stat. 236, 1291

"SEC. 8. That whenever opium or cocaine or any preparations or derivatives thereof shall be found upon any vessel arriving at any port of the United States which is not shown upon the vessel's manifest, as is provided by sections twenty-eight hundred and six and twenty-eight hundred and seven of the Revised Statutes, such vessel shall be liable for the penalty and forfeiture prescribed in section twenty-eight hundred and nine of the Revised Statutes."

Approved, January 17, 1914.

Act of July 11, 1941, ch. 289, 55 Stat. 584, *repealed by* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, § 1101(a)(9), 84 Stat. 1236, 1292

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That (a) whoever brings on board, or has in his possession or control on board, any vessel of the United States, while engaged on a foreign voyage, any narcotic drug not constituting a part of the cargo entered in the manifest or part of the ship stores, shall be fined not more than $5,000 or be imprisoned for not more than five years, or both.

(b) As used in subsection (a) "narcotic drug" means any narcotic drug as now or hereafter defined by the Narcotic Drugs Import and Export Act, or any substance in respect of which a tax is imposed pursuant to chapter 23 of the Internal Revenue Code, as amended, or pursuant to any regulations thereunder.

SEC. 2. This Act shall take effect thirty days after the date of its enactment.

Approved, July 11, 1941.

## 21 U.S.C. § 184 (REPEALED 1970)

**§ 184. Seizure and forfeiture of narcotic drugs found on vessel and not shown on manifest, or landed from vessel without permit; penalty against master of vessel; withholding clearance papers; mitigation and remission of forfeitures and penalties**

A narcotic drug that is found upon a vessel arriving at a port of the United States or territory under its control or jurisdiction and is not shown upon the vessel's manifest, or that is landed from any such vessel without a permit first obtained from the collector of customs for that purpose, shall be seized, forfeited, and disposed of in the manner provided in the second paragraph of section 173 of this title, and the master of the vessel shall be liable (1) if the narcotic drug is smoking opium, to a penalty of $25 an ounce, and (2) if any other narcotic drug, to a penalty equal to the value of the narcotic drug.

Such penalty shall constitute a lien upon the vessel which may be enforced by proceedings by libel in rem. Clearance of the vessel from a port of the United States may be withheld until the penalty is paid, or until there is deposited with the collector of customs at the port, a bond in a penal sum double the amount of the penalty, with sureties approved by the collector, and conditioned on the payment of the penalty (or so much thereof as is not remitted by the Secretary of the Treasury) and of all costs and other expenses to the Government in proceedings for the recovery of the penalty, in case the master's application for remission of the penalty is denied in whole or in part by the Secretary of the Treasury.

The provisions of law for the mitigation and remission of penalties and forfeitures incurred for violations of the customs laws, shall apply to penalties incurred for a violation of the provisions of this section. Feb. 9, 1909, c. 100, § 8, as added Jan. 17, 1914, c. 9, 38 Stat. 277, and amended May 26, 1922, c. 202, § 3, 42 Stat. 598.

## 21 U.S.C. § 184a (REPEALED 1970)

**§ 184a. Drugs on vessels; penalties; definition of narcotic drug**

(a) Whoever brings on board, or has in his possession or control on board, any vessel of the United States, while engaged on a foreign voyage, any narcotic drug not constituting a part of the cargo entered in the manifest or part of the ship stores, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000. For provision relating to sentencing, probation, etc., see section 7237(d) of the Internal Revenue Code of 1954.

(b) As used in subsection (a) of this section "narcotic drug" means any narcotic drug as now or hereafter defined by sections 171, 173, 174, 176–184, and 185 of this title, or any substance in respect of which a tax is imposed pursuant to subchapter A of chapter 39 of the Internal Revenue Code of 1954, or pursuant to any regulations thereunder. July 11, 1941, c. 289, § 1, 55 Stat. 584; July 18, 1956, c. 629, Title I, § 108, 70 Stat. 571.