**UNITED STATES of America, Appellee,**

v.

**Pedro ORTIZ–ALARCON,**
**Defendant, Appellant.**

**No. 89–1617.**

United States Court of Appeals,
First Circuit.

Heard Sept. 11, 1990.

Decided Oct. 29, 1990.

Rehearing and Rehearing En Banc
Denied Dec. 20, 1990.

Luis A. Medina Torres, Hato Rey, P.R., for defendant, appellant.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for U.S.

Before CAMPBELL, Circuit Judge, COFFIN, Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

Defendant-appellant Pedro Ortiz–Alarcon (Ortiz) assails his conviction on all three counts of an indictment charging him with violating 21 U.S.C. §§ 952(a) (count I), 841(a)(1) (count II), and 955 (count III).[1] Finding his vociferations to comprise more cry than wool, we affirm.

## BACKGROUND

We summarize the facts in traditional post-conviction fashion, taking the evidence in the light most flattering to the prosecution. *See United States v. Jimenez–Perez*, 869 F.2d 9, 10 (1st Cir.1989); *United States v. Mejia–Lozano*, 829 F.2d 268, 270 (1st Cir.1987).

Appellant and his sister, Luz Maria Ortiz–Alarcon, Colombian nationals, were on board Iberia Airlines Flight 918 from Bogota, Colombia when it touched down at San Juan's international airport on December 3, 1988, en route to Madrid, Spain. An examination of the in-transit luggage revealed that two cocaine-laden suitcases were also on board. Appellant and his sibling were linked to the bags by a strong chain of circumstantial evidence. Both were indicted.

Luz Maria Ortiz–Alarcon entered a plea and her case is not before us. Appellant went to trial and was found guilty by a jury. He was given concurrent sentences on the counts of conviction: sixty-three months incarceration, to be followed by a four-year term of supervised release. On appeal, he does not challenge the sufficiency of the evidence against him. Rather, Ortiz raises only two issues, one related to the district court's jury instructions and the other of constitutional provenance. We discuss his claims sequentially.[2]

## THE JURY INSTRUCTIONS

■ Appellant contends that the district court erred in refusing a proposed charge and instructing the jury that, in order to convict on count I—importation of drugs in contravention of 21 U.S.C. § 952(a)—it was unnecessary to prove that the defendant specifically intended to import the cocaine into the United States. We rejected precisely the same assertion in *Mejia–Lozano*, where we held squarely that 21 U.S.C. § 952(a) does not require that the accused form the specific intent to bring drugs into the country—or even that he be aware his international flight would stop in the United States. *Mejia–Lozano*, 829 F.2d at 271–72. In order to convict, "[i]t is sufficient that the defendant knowingly possessed the contraband, and brought it into the jurisdiction of the United States." *Id.* at 271. Put another way, "the offense [of importation] was complete the moment defendant, knowingly in possession of cocaine, landed in this country with the contraband...." *Id.* at 272. *Accord United States v. Franchi–Forlando*, 838 F.2d 585, 587–88 (1st Cir.1988); *United States v. McKenzie*, 818 F.2d 115, 118 (1st Cir.1987).

Reversible error cannot be premised on the trial court's eschewal of a suggested jury instruction which distorts the law. *Franchi–Forlando*, 838 F.2d at 589. Ergo, Ortiz's conviction on count I is not vulnerable to the offensive which he has mounted. *See, e.g., Mejia–Lozano*, 829 F.2d at 272 (upholding district court's refusal to give

---

**1.** The pertinent portions of the statutes of conviction read as follows:

> It shall be unlawful to import into the customs territory of the United States from any place outside thereof ... any controlled substance ... or any narcotic drug [with exceptions not germane to this case].

21 U.S.C. § 952(a) (1982 & Supp. V 1987).

> ... [I]t shall be unlawful for any person knowingly or intentionally—
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ....

21 U.S.C. § 841(a)(1) (1982 & Supp. V 1987).

> It shall be unlawful for any person to bring or possess on board any ... aircraft, ... arriving in or departing from the United States ... a controlled substance ... unless such substance or drug is a part of the cargo entered in the manifest of the ... aircraft....

21 U.S.C. § 955 (1982 & Supp. V 1987).

**2.** The government asserts that the defense did not properly preserve either of the two assigned errors. Although our review of the record bears out the government's position, we choose, for simplicity's sake, to avoid the added complication of plain error review and to address Ortiz's arguments on the merits.

jury instruction similar to that advanced here).

## THE CONSTITUTIONAL CLAIM

■ The Double Jeopardy Clause mandates that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const.Amend. V. The Clause embodies a triumvirate of safeguards:

It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). It is the third prong of the Clause's prophylaxis that appellant attempts to invoke. He maintains that conviction and sentence on the three counts charged in the indictment "subjected defendant to multiple punishment for the same offense thereby violating" the double jeopardy prohibition. Appellant's Brief at 1. We disagree.

In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court mapped out the following approach to determine if multiple sentences for overlapping conduct infracted the fifth amendment:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied ... is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182 (citations omitted). In *Franchi–Forlando*, 838 F.2d at 589–91, we applied the *Blockburger* test to overrule an objection very similar to appellant's grievance. There, we demonstrated that two of the statutes under which Ortiz was convicted—21 U.S.C. § 952(a) and 21 U.S.C. § 955—passed this test with flying

colors. *Id.* at 590–91.[3] We adhere to *Franchi–Forlando* both in method and result. Each of appellant's crimes demanded proof of some distinctive fact not called for by the other charges: count I required proof of importation; count II required proof that Ortiz intended to distribute; and count III required proof that Ortiz's cache lacked proper documentation. Under *Blockburger*, there was no constitutional infirmity. See *Franchi–Forlando, supra;* *United States v. Mora*, 876 F.2d 76, 78 (9th Cir.1989) ("The act of importation stands independent of the planned eventual distribution in this country, and hence should be punished separately."); *United States v. Borchardt*, 698 F.2d 697, 702 (5th Cir.1983) ("Because the elements of 21 U.S.C. § 952(a) ... are different from the elements of 21 U.S.C. § 841(a)(1) ... [the defendant's] right to be free from double jeopardy was not violated by his consecutive sentences on these substantive counts.").

■ At oral argument in this court, a question surfaced as to whether *Blockburger* is still the controlling authority. To be sure, in *Grady v. Corbin*, —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the Supreme Court added a new dimension to the jurisprudence of double jeopardy. While reiterating that "a court must first apply the traditional *Blockburger* test," *id.* 110 S.Ct. at 2090, the Court ruled that the Double Jeopardy Clause also "bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 2093 (footnote omitted).

The added "same conduct" test, however, does not assist Ortiz; it is crystal clear that the *Grady* Court intended the limitation to apply only to successive prosecutions—the first two prongs of the jeopardy prophylaxis—and not to multiple punishment cases,

---

**3.** Although Franchi–Forlando was convicted of violating the same three statutes which are involved in this case, his counsel apparently limited the multiple punishment claim to the perceived imbrication between 21 U.S.C. §§ 952(a) and 955, and did not simultaneously challenge the conviction for possession with intent to distribute, 21 U.S.C. § 841(a)(1), on double jeopardy grounds.

like this one, which implicate only the third jeopardy safeguard. *See, e.g., id.* at 2090–91 (distinguishing between multiple punishments and multiple prosecutions); *id.* at 2091 n. 8 (noting that *Blockburger* is not the exclusive definer of double jeopardy "in the context of successive prosecutions"); *id.* at 2092 ("we have not relied exclusively on the *Blockburger* test to vindicate the Double Jeopardy Clause's protection against multiple prosecutions"); *id.* at 2093 ("*Blockburger* does not protect defendants sufficiently *from the burdens of multiple trials*") (emphasis supplied).

In fine, the *Grady* Court, although crafting a more sheltering rule for successive prosecutions, recognized that "[t]he *Blockburger* test was developed 'in the context of multiple punishments imposed in a single prosecution,'" *id.* 110 S.Ct. at 2090–91 (quoting *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985)), and did not purpose to disturb *Blockburger*'s primacy in such cases. We hold, therefore, that *Grady* pertains only to successive prosecutions, not to claims that multiple counts within a single indictment have double jeopardy connotations. *Accord United States v. Pungitore,* 910 F.2d 1084, 1117 n. 42 (3d Cir.1990). Because the matter at hand is of the latter stripe—it is a multiple punishment case rather than a successive prosecution case—*Grady* does not apply. *Blockburger* governs; and, as demonstrated *supra,* its application validates the diversity of counts and the imposition of sentences on each.

*Affirmed.*