**UNITED STATES, Appellee,**

v.

**Gloria Patricia OCAMPO–GUARIN, Defendant, Appellant.**

No. 90–1855.

United States Court of Appeals, First Circuit.

Heard Aug. 1, 1992.

Decided July 8, 1992.

---

Benicio Sanchez–Rivera, San Juan, P.R., for defendant, appellant.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before SELYA, Circuit Judge,
BOWNES, Senior Circuit Judge, and
WOLF,[*] District Judge.

WOLF, District Judge.

Defendant-appellant Gloria Patricia Ocampo–Guarin appeals from her conviction in the District of Puerto Rico for: (1) possession with intent to distribute more than 1600 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1); (2) importing cocaine into the customs territory of the United States, in violation of 21 U.S.C. § 952(a); and (3) possessing cocaine on board an aircraft, in violation of 21 U.S.C. § 955. On appeal Ocampo–Guarin challenges the sufficiency of the evidence. She also asserts she was deprived of a fair trial as a result of allegedly improper statements in the prosecutor's closing argument and by a purportedly erroneous jury instruction.

Each of Ocampo–Guarin's claims is without merit. Accordingly, we affirm.

## I

### FACTS

On appeal the evidence must be viewed in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Mejia–Lozano*, 829 F.2d 268, 270 (1st Cir.1987). The evidence in the instant case, analyzed in this fashion, establishes the following relevant facts.

In February, 1990, Ocampo–Guarin was a twenty-one year-old resident of Medellin, Colombia. She owned a boutique, from which she earned about $600 per month.

On February 26, 1990, Ocampo–Guarin paid $1,300 cash for a ticket on the next day's Iberia Airlines Flight 914, which originated in Bogota, Colombia, and was scheduled to stop at the Luis Munoz Marin International Airport in Puerto Rico on its way to its ultimate destination of Madrid, Spain. Ocampo–Guarin had previously travelled to Europe in January, 1990, and October, 1989, spending over $1,500 on each trip.

On February 27, 1990, she checked her suitcase for Madrid, Spain and boarded Iberia Flight 914 in Bogota. The plane made its regularly scheduled stop in Puerto Rico. The passengers who planned to continue to Madrid, including Ocampo–Guarin, disembarked into an in-transit holding area.

United States Customs officials inspecting all in-transit luggage on Flight 914 became suspicious of a suitcase with an unusually thick frame. Further examination indicated that a large quantity of cocaine was hidden in the frame. Attached to the suitcase were a tag with the name "Gloria O." and a baggage claim tag numbered 090537.

As the passengers were re-boarding Flight 914, Ocampo–Guarin was identified as having the baggage claim ticket for the suitcase containing the cocaine. She was promptly arrested and advised of her

[*] Of the District of Massachusetts, sitting by desig-
nation.

rights. Upon questioning, Ocampo–Guarin identified the suitcase as belonging to her and provided the keys to open it. A search indicated that she was carrying more than $1,000 in United States currency, as well as a sum of Colombian money.

At trial, Ocampo–Guarin acknowledged that the suitcase was hers. She did not claim that she did not intend to reclaim her suitcase when Flight 914 landed in Madrid. Rather, she testified she did not know there was cocaine in the suitcase. More specifically, Ocampo–Guarin asserted that she had lent her suitcase to a friend, whose address she did not know. This friend, she said, had returned it to her at a hotel two days earlier and asked her to deliver several items in the suitcase to someone in Madrid named "Alberto," who would meet her. Ocampo–Guarin claimed she agreed to deliver those items to "Alberto" without knowing the suitcase also contained over 1600 grams of cocaine, having a street value of approximately $500,000.

## II

### DISCUSSION

#### A. *The Sufficiency of the Evidence*

■ With regard to the sufficiency of the evidence, we must decide whether, viewing the evidence and all legitimate inferences which may be drawn from it in the light most favorable to the government, a rational jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Arango–Echeberry,* 927 F.2d 35, 37 (1st Cir.1991); *United States v. Bernal,* 884 F.2d 1518, 1523 (1st Cir.1989). Ocampo–Guarin asserts the evidence at her trial was insufficient to prove that she possessed the cocaine while in the United

States as required by 21 U.S.C. §§ 841(a)(1) and 955[1] or brought it with her from abroad as required by 21 U.S.C. § 952(a).[2] Ocampo–Guarin also contends that the jury could not have properly found that she knew there was cocaine in her suitcase, as required by all three statutes, or that as a passenger on Flight 914 destined for Spain she intended to bring narcotics into the United States as required by § 952(a). For the reasons set forth below, each of these claims is incorrect.

■ Ocampo–Guarin relies most heavily on the contention that she did not possess the suitcase and the cocaine it contained in the United States. Rather, she asserts that she gave up possession and lost control of the suitcase when she checked it on Flight 914 because only the airline would decide how to deliver it to the point of destination and, indeed, the airline could have diverted the suitcase to another plane.[3] Application to the instant case of well-established principles, however, indicates that there was ample evidence to prove that Ocampo–Guarin brought the cocaine into the United States and possessed it here.

■ The law recognizes two kinds of possession: actual possession and constructive possession. *United States v. Lamare,* 711 F.2d 3, 5 (1st Cir.1983); *United States v. Latham,* 874 F.2d 852, 861 (1st Cir.1989). Possession can also be either exclusive or joint. *Lamare,* 711 F.2d at 5.

Possession involves dominion and control over something. Constructive possession exists when a person "knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others."

1. 21 U.S.C. § 841(a)(1) provides that it shall be unlawful "for any person knowingly or intentionally" to "possess with intent to ... distribute ... a controlled substance."

21 U.S.C. § 955 provides that it shall be unlawful to "bring or possess" a controlled substance aboard any aircraft "arriving in or departing from the United States."

2. 21 U.S.C. § 952(a) provides that it shall be unlawful "to import into the customs territory of the United States from any place outside

thereof ... a controlled substance." This statute "requires little else but a showing that a defendant has knowingly brought a controlled substance with him from abroad into the United States." *United States v. McKenzie,* 818 F.2d 115, 118 (1st Cir.1987).

3. An airline employee testified at the trial, "Once a passenger checks in his luggage, he loses control over it," and "decisions regarding where to pick or to take the luggage are taken only by airline personnel."

*Lamare,* 711 F.2d at 5 (*quoting United States v. Craven,* 478 F.2d 1329, 1337 (6th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973)).

In *Lamare,* we upheld the conviction of the defendant under 18 U.S.C. § 922(h) for "receiving" a firearm where a friend had left the gun as collateral for a towing charge owed by the defendant. *Id.* at 5. Although the defendant never physically possessed the gun, we held that as he "could have taken actual possession of the pistol at any time by paying the towing charge," the defendant was properly convicted of constructively possessing the firearm. *Id.* at 5–6.

Similarly, in the instant case, the evidence was more than sufficient to support a finding that Ocampo–Guarin was in constructive possession of the suitcase and the cocaine it contained, and that she was responsible for bringing it from abroad into the United States. Ocampo–Guarin carried the baggage claim tickets that represented her legal right to reclaim the luggage. *United States v. Williams,* 503 F.2d 50, 53 (6th Cir.1974). Indeed, her intent to reclaim the luggage when she arrived in Spain is not disputed.

The conclusion that Ocampo–Guarin at all relevant times constructively possessed her suitcase is not qualified by the fact that the airline had physical control over the luggage once it was checked. This principle is most vividly illustrated in *Williams, supra,* in which the court upheld a finding of possession of checked luggage by a passenger, although the airline had actually lost the luggage and it was in the wrong city when federal agents searched it. As the court in *Williams* correctly stated:

> The fact that the luggage is lost in transit does not alter the passenger's intention to reclaim the luggage when it arrives at the intended destination. Nor does the loss affect his power to exercise control over the luggage through the airline's personnel.

*Id.* at 53.

Our decision that Ocampo–Guarin constructively possessed the suitcase and the cocaine in the United States is consistent with many previous decisions in this circuit in which passengers landing in the United States with checked luggage have been found to be in knowing possession of the contents. *See United States v. Lopez–Gil,* 965 F.2d 1124 (1st Cir.1992); *United States v. Arango–Echeberry,* 927 F.2d 35 (1st Cir. 1991); *United States v. Gomez–Ruiz,* 931 F.2d 977, 979 (1st Cir.1991); *United States v. Mack,* 892 F.2d 134, 138 (1st Cir.1989); *United States v. Franchi–Forlando,* 838 F.2d 585 (1st Cir.1988); *United States v. Mejia–Lozano,* 829 F.2d 268, 271 (1st Cir. 1987). In those cases, however, the defendants did not contend they did not possess the luggage at issue. Thus, it has not previously been necessary to decide expressly the claim on which Ocampo–Guarin erroneously relies. We do so today.

■ Ocampo–Guarin also claims that the evidence was insufficient to prove she knew that the cocaine was in the suitcase. The jury, of course, was not required to believe her testimony denying knowledge. Issues relating to state of mind, such as knowledge and intent, may be influenced by assessments of credibility and often must be established by circumstantial evidence.

In this case the jury had the opportunity to judge Ocampo–Guarin's credibility. There was also ample circumstantial evidence to prove her knowledge of the contents of the suitcase. This evidence included, but was not limited to, her repeated trips to Europe, the amount of money she was carrying and her inability to provide the address of the friend who gave her the suitcase or the last name of the person to whom she was to deliver it in Madrid.

■ Similarly, the quantity of cocaine involved was sufficient to permit the inference that she knew it would be distributed. *United States v. Vazquez,* 857 F.2d 857, 865 (1st Cir.1988); *United States v. Murray,* 753 F.2d 612, 616 (7th Cir.1985). Indeed, her delivery to "Alberto" alone would have constituted "distribution." 21 U.S.C. § 802(11) (defining "distribute" to mean "deliver"); *United States v. Pool,* 660 F.2d

547, 561 (5th Cir.1981). The fact that the distribution was intended to occur in Spain is immaterial because "the *place* of intended distribution is not important so long as such intent is established together with the fact of possession within the United States." *United States v. McKenzie*, 818 F.2d 115, 118 (1st Cir.1987) (emphasis in original).

■ The appellant also argues that it was not shown that she intended to import cocaine into the United States, in violation of § 952, because she was on a flight bound for Spain, had checked through to that destination, and it was not shown that she was even aware that the flight would stop in the United States. However, it is not necessary to establish that the defendant was aware that the flight would stop in the United States in order to prove a violation of § 952(a). *Lopez–Gil, supra; Mejia–Lozano*, 829 F.2d at 271–72; *Franchi–Forlando*, 838 F.2d at 587. Rather, as we have held previously, the charged offense has been committed "the moment the defendant, knowingly in possession of cocaine, land[s] in this country with the contraband, regardless of her knowledge of the aircraft's itinerary or the planned terminus of her journey." *Mejia–Lozano*, 829 F.2d at 272.

Even the decision of the Court of Appeals for the Second Circuit which Ocampo–Guarin urges us to find persuasive does not indicate she is entitled to prevail in this appeal. *See United States v. Londono–Villa*, 930 F.2d 994 (2d Cir.1991). In *Londono–Villa*, a defendant's conviction for conspiring to import cocaine into the United States was reversed because he had been involved in transporting cocaine from Columbia to Panama and there was insufficient evidence to prove he knew it would eventually be taken to the United States. *Id.* at 1001. The Court of Appeals for the Second Circuit held that knowledge or intent that the narcotics enter the United States was an element of the crime. *Id.* at 998–99. However, it expressed its agreement with our conclusions in *Mejia–Lozano* and *Franchi–Forlando* as they apply to this case, stating:

When a person carrying drugs has voluntarily travelled on an airplane that was scheduled to stop in the United States, we see no reason why a jury may not infer that he or she knowingly or intentionally entered the United States with drugs.

*Id.* at 1000–1001.

In this case, the court did not give the government's requested instruction, based on *Mejia–Lozano* and *Franchi–Forlando*, that it was not necessary to prove the defendant knew he or she would be stopping in the United States. Thus, the appellant got the benefit of an instruction consistent with *Londono–Villa*'s holding that it must be proven that a defendant knew the airplane would be landing in the United States. Nevertheless, she was convicted on the basis of evidence comparable to that found to be sufficient in *Londono–Villa*. *Id.* at 1000–1001.

Accordingly, the evidence was sufficient to convict the appellant on all three counts of the indictment.

B. *The Prosecutor's Closing Argument*

■ The appellant contends that the prosecutor's closing statement was improperly "inflammatory" in several respects. First, she objects to the prosecutor's references to her previous trips to Europe in discussing the amount of cash at the appellant's disposal, because it was not shown that she paid for the trips herself. Second, she objects to the prosecutor's reliance on testimony of an investigating agent that he saw food in the suitcase which could have been used to hide the smell of the cocaine, because the agent's testimony was contradicted by other evidence. Finally, Ocampo–Guarin contends that the prosecutor's suggestion that she knew she was bringing drugs into Spain was inappropriate, because the appellant had testified that she did not know there was cocaine in the suitcase.

The appellant's arguments are without merit and, indeed, misapprehend the role of closing argument. The prosecutor's closing argument did not include inappropriate

comparisons to other crimes, personal insults, or inflammatory remarks based on religion or race, such as those made in the case cited by the appellant, *United States v. Giry*, 818 F.2d 120, 132–34 (1st Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987). Rather, the prosecutor here urged the jury to make rational inferences from the evidence, and to resolve disputes in the evidence in the government's favor. This is perfectly appropriate because "[a]lthough it is the jury's job to draw inferences, there is nothing improper in the Government's suggesting which inferences should be drawn." *United States v. Mount*, 896 F.2d 612, 625 (1st Cir.1990) (*citing United States v. Cotter*, 425 F.2d 450, 452 (1st Cir.1970)). Moreover, there was sufficient evidence to support each of the inferences for which the prosecutor argued. To the extent the appellant now suggests the prosecution mischaracterized the evidence, the court properly and repeatedly instructed the jury that its recollection, and not statements by lawyers, was controlling. Accordingly, there was no impropriety in the closing argument.

### C. *The Jury Instructions*

 The appellant's final contention is that the court erred in instructing the jury to use common sense in its deliberations, because this implies that common sense should take priority over the evidence.[4] However, the defendant did not object to this instruction at trial.[5] Claims raised for the first time on appeal will only be considered "where a gross miscarriage of justice" will occur, and where "the new ground is so compelling as virtually to insure appellant's success." *Hernandez–Hernandez v. United States*, 904 F.2d 758, 763 (1st Cir.1990) (*quoting Johnston v.*

---

4. The relevant instructions were as follows:
 Now, fact finding is not required—does not require mathematical certainty. You as jurors are supposed to reach your conclusions on the basis of common sense, common understanding and fair beliefs grounded on the evidence presented during the trial and proof of the circumstances from which inferences can fairly be drawn.
 Don't leave your common sense, common understanding and fair beliefs in the hallway.

*Holiday Inns*, 595 F.2d 890 (1st Cir.1979)). The court's instruction concerning common sense was both conventional and correct. *See, e.g., United States v. Capone*, 683 F.2d 582, 587 (1st Cir.1982); *Rehler v. Beech Aircraft Corp.*, 777 F.2d 1072, 1082 (5th Cir.1985). Thus, appellant's belated objection does not merit consideration, let alone provide a basis for reversal.

### III

### CONCLUSION

For the reasons described above, the record reflects that Ocampo–Guarin was afforded a fair trial, that the evidence was sufficient to support the jury's verdict, and that her conviction was not tainted by any error in the prosecutor's summation or the judge's charge. Thus, her conviction is hereby **AFFIRMED**.

Take it to the jury room, apply that common sense and those common understandings and those fair beliefs to all the evidence and that will help you.

5. The appellant's attorney objected to several of the instructions before they were given, but did not object to the instruction at issue here. After the instructions were given he renewed the same objections.